Dey *against* Murray.

ALBANY, August, 1812.

Dey v. Murray.

THIS was an action of *assumpsit*. The cause was tried before the *Chief Justice*, at the *New-York* sittings, in *December*, 1810.

The plaintiff read in evidence the following writing: "*New-York*, 10th *December*, 1807, *Anthony Dey* having drawn in favour of *George W. Murray*, four bills of exchange, as the attorney for *Richard S. Hackley*, at one hundred and twenty days after sight, for one hundred and twelve pounds ten shillings sterling, on *Thomas Mullet & Co.* of *London*. It is understood and agreed, that if all or either of the said bills should not be accepted or paid, he is not to be responsible for the payment of the same, or any damages, interest, costs or charges, that may arise or accrue thereon; the same bills having been drawn to facilitate

A. remitted 500l. to B. in London, to pay a bill for the same sum, drawn by his attorney C. on B., pursuant to an agreement between them. The bill having been presented for payment before the funds had reached the hands of B., it was returned protested. Afterwards, another bill for 112l. 10s.,

drawn also by C. as attorney of A. in favour of D., was presented to B., who accepted and paid it, out of the 500l. which had, in the mean time, come to his hands.

It was held, that though the 500l. was placed in the hands of B. for a specific purpose, yet C. had no right of action against D. to recover back the money paid to him, but must look to the other parties, to rectify the mistake, if any was made.

the payment of five hundred dollars, which *George W. Murray,* as bail for *Richard S. Hackley,* has paid for him in a suit brought by *John Knox* against the said *Hackley,* and which has been compromised, and to which compromise I have given my assent, as the best arrangement, under all circumstances, that could be made, *G. W. Murray;*" also a certificate, signed by *George W. Murray,* dated the 12th *December,* 1801, as follows : " On the 10th day of *December,* 1807, *Anthony Dey,* as the attorney of *Richard S. Hackley,* drew a set of exchange payable to the undersigned *George W. Murray,* on *Thomas Mullet & Co.* of *London,* at one hundred and twenty days after sight, for 112*l.* 10*s.* sterling, which was for one half of the compromise that was made of *John Knox's* claim against the said *Richard S. Hackley,* and for which amount the said *Richard S. Hackley* was to provide payment, by remitting the same with a similar amount to the said *Mullet & Co.* And which said set of exchange I acknowledge was duly paid and carried to the credit of my account with the said *Thomas Mullet & Co.* on the 31st day of *March* last, out of a sum of 500*l.* sterling, which *Richard S. Hackley* had previously remitted to the said *Thomas Mullet & Co.* to pay *Anthony Dey,* as will more fully appear from an extract of *Thomas Mullet & Co.'s* letter to me, dated *London,* 7th *September,* 1808, as follows: " We do not see that we ever mentioned to you, that we had accepted the 112*l.* 10*s.* you remitted as drawn by Mr. *Dey.* We did so on the 31st of *March,* having then determined to accept another bill for the same sum which with yours had been suspended. The fact is, Mr. *Dey* drew 500*l.,* 112*l.* 10*s.* and 112*l.* 10*s.* The first bill went back for want of funds from *Hackley* or *Meade.* After it was returned, a remittance of 500*l.* came. We tried to stop the bill but it was too late to do so, and we then considered it was our duty to accept the two others, which we accordingly did. Mr. *Dey* is very angry with us, and accuses us of a collusion with you, in this business, which is very singular, as we only treated you as we did the holder of the other bill, (a perfect stranger,) and if we had done worse for you, than for a stranger, it would have been singular indeed. We mention this at large, that you may know what to reply, should Mr. *Dey* speak to you on the subject."

It appeared that, in a conversation between the plaintiff and defendant, the plaintiff said to the defendant, " You are perfectly

satisfied that you have been paid 500 dollars on account of *Knox's* business, out of my money, that was not remitted for that purpose, but which belonged to me, and that it has not been refunded;" to which the defendant replied, that he knew he had been paid out of the defendant's money, but the defendant must look to *Mullet & Co.* and settle the matter with them.

ALBANY,
August, 1812.

DEY
v.
MURRAY.

On this evidence, the *Chief Justice* nonsuited the plaintiff; and a motion was, afterwards, made to set aside the nonsuit.

*Wells*, for the plaintiff, contended, that on principles of natural justice, the case was strongly in favour of the plaintiff. The moment the 500*l.* was placed, by *Hackley*, in the hands of *Mullet & Co.*, to meet the bill drawn by *Dey*, it ceased to be the money of *Hackley*, and he had no control over it. It was subject to the order of *Dey* alone, as much as if it had been placed in a bank, payable to his order. On receiving the money, *Mullet & Co.* became the agents or bailees of *Dey*. If an agent wrongfully, or through mistake, pays the money of his principal, the latter may recover it back from the person to whom it has been paid.* It was no answer to say that the plaintiff might resort to *Mullet & Co.*; for he still had a right to consider *Mullet & Co.* as the agents of the plaintiff, and as having paid the money wrongfully.

\* *Cowp.* 806. *Doug.* 637. *Bull. N. P.* 35.

*Colden*, contra, insisted, that the argument on the part of the plaintiff amounted to no more than that *Mullet & Co.* had paid the money out of the wrong heap. But no matter from what fund the money has been paid, if the defendant had a right to receive it. The general principle laid down in the books cited, is not denied; but it must be taken with the fact, that the person who received the money had no right to it. This cannot be pretended in regard to the defendant.

*Per Curiam.* The bills of exchange drawn in favour of the defendant being paid by *Mullet & Co.* on whom they were drawn, and paid too out of moneys transmitted to them by *Hackley*, the drawer of the bills, the defendant is not bound to refund the money to the plaintiff. It cannot be maintained that the money so paid was the plaintiff's money, merely because *Hackley* had previously remitted money to *Mullet & Co.* to pay the plaintiff. The specific money had no *earmark*. The mistake, if any,

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

must be rectified between *Hackley,* the plaintiff, and *Mullet & Co.* There was no privity between the defendant and those parties in that negotiation. The plaintiff must look to *Mullet & Co.* or *Hackley,* and not to the defendant. This case is analogous, in principle, to that of *Rogers* v. *Kelly,* (2 *Campb. N. P.* 123.)

Motion to set aside the nonsuit denied.