NEW YORK,
October, 1816.

JACKSON
v.
MOORE.

</div>

<div align="center">

Motion denied.

</div>

<div align="center">

━━━━━◦◦✷◦◦━━━━━

</div>

JACKSON, *ex dem.* COLDEN AND OTHERS, *against* MOORE.

THIS was an action of ejectment, brought to recover lands lying in the artillery patent, in the town of *Fort Ann*, in the county of *Washington*, and which was commenced in *August* vacation, in the year 1807. The case was tried before Mr. Justice *Van Ness*, at the *Washington* circuit, in *June*, 1810.

The lessors of the plaintiff claimed under letters patent to *Joseph Walton* and 23 others, dated the 24th of *October*, 1764, for a tract of land containing 24,000 acres, known by the name of the artillery patent. This tract was conveyed by deed, dated the 25th of *October*, 1765, by *Joseph Walton, Alexander Colden*, and the other proprietors, to *Abraham Walton*, by which it was recited, that the parties of the first part having, by sundry *mesne* conveyances, become seised of the whole tract, in the proportions therein stated, had agreed to divide the tract into 250 lots, and to release the whole to the party of the second part, his heirs and assigns, to stand seised of the several lots drawn to the

<div align="right">

Where several persons, being possessed of an undivided tract of land, in 1765, made partition, and conveyed the entire tract to *A.*, in trust, to convey to each of the grantors his proportion in severalty, and the land had been since generally held according to that partition, it was held, in an action of ejectment brought in 1807, by a person claiming under one of the parties between whom partition was made, that a conveyance by the trustee, in pursuance of the trust, was to be presumed.

*A.* entered into possession of land, under a

</div>

lease in fee, in 1775, and in 1778 gave the land to *B.*, by parol, who continued in possession, claiming under the lease, until 1798, excepting the period of the war, and a year or two after, and *B.* conveyed the premises to *C.*, and *C.* to *D.*, who conveyed the same to the defendant; it was held, that this was a sufficient adverse possession to bar an action of ejectment by the person having title to the land, commenced in 1807.

Where an adverse possession begins to run in the lifetime of the ancestor, and the land descends to an infant heir, the latter is not protected by his disability.

share of each of the parties of the first part, for their respective uses, in fee, and designated the several lots which had been drawn to the share of each of the parties of the first part; and the party of the second part covenanted to execute releases in fee, to each of the parties of the first part of their respective lots when required. Abraham Walton died several years before the commencement of this action, and the lessors of the plaintiff, excepting Colden, are his heirs at law. Alexander Colden died in 1775, leaving Richard N. Colden his heir, who died in 1777, leaving Alexander R. Colden his heir, who died in 1796, leaving Cadwallader R. Colden, one of the lessors of the plaintiff, his only brother and heir. Alexander R. Colden was about 22 years old when he died, and Cadwallader R. Colden was born in 1775 or 1776. It was admitted on the trial, that the patent was generally settled and held under, and according to, the partition made by the proprietors.

It was proved by the defendant, that on the 27th of May, 1767, one Jane Ragland took possession of 100 acres of land, on the north part of lot No. 15., in the artillery patent, (in which the premises in question are included, and which, in the partition of the patent, had fallen to the share of Alexander Colden,) under a lease in fee from one Anthony Farrington, reserving a pepper-corn rent. Jane Ragland died in 1778, and previous to her death, gave the land she claimed, by parol, to her son, James Perkins, (she, however, having other children,) who went into possession, and continued in possession until the war, when he joined the army of the United States, and one or two years after the war, resumed the possession for about 11 years. The original lease to Jane Ragland was burnt with Perkins's house, after the war. In 1787 or 1788, Perkins's possession was in part enclosed by fences, principally made by the owners of the adjoining lots upon their outer lines, and the residue by a fence of brush and lopped trees. Perkins had, at that time, about 30 acres improved, and had since extended his improvement to 30 or 40 acres. Perkins, by deed dated the 30th of August, 1798, conveyed the land which he claimed to one Solomon Williams, who took possession at the time of his purchase. Williams, by deed dated the 20th of October, 1803, conveyed 73 acres, 12 rods, and 75 poles, to Roswell Comstock, who, by deed dated the 1st of August, 1804, conveyed the same to the defendant. It was admitted, that Perkins was possessed of the

premises, in the manner above stated, about 21 years previous to the commencement of this suit.

. A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the above facts.

. *Van Vechten* and *Mitchill*, for the plaintiff, contended, 1. That the plaintiff had showed a sufficient title; that if the statute executed the uses, then the lessors claimed under the heirs of *Colden ;* if not, they derived title under *Walton,* to 8-24ths of the premises. But, in either case, they claimed to hold in severalty ; and they relied on the case of *Doe, ex dem. Clinton,* v. *Phelps,** and *Doe, ex dem. Clinton,* v. *Campbell,†* as in point to show that, after so great a lapse of time, a title in the whole in *Walton* and his heirs, and a conveyance by the trustee was to be presumed; and that the lessors had, therefore, a perfect title to the whole, in severalty.

· 2. As to the adverse possession set up, the present case did not come within the principles of former adjudications.‡

\* 9 Johns. Rep. 169.
† 10 Johns. Rep. 477. Jackson v. Lunn, 3 Johns. Cases, 292.

‡ 2 Johns. Rep. 250. 9 Johns. Rep. 163. 174.

*Z. R. Shepherd,* contra, insisted, that the lessors of the plaintiff had not shown title. In the cases cited, the patentees were lessors of the plaintiff. But what title had *Alexander R. Colden?* The act of eight of the 24 patentees joining in a conveyance to a special trustee could not affect the rights of the other patentees. Again ; the defendant has shown an adverse possession, uninterrupted, for more than 20 years.        :·

. *Per Curiam.* The premises in question are a part of lot No. 15., in the artillery patent ; and the lessors of the plaintiff are. *Cadwallader R. Colden,* and the heirs of *Abraham Walton.* The first question that arises is, whether any title has been shown in the lessors, or any of them. The patent was granted in the year 1764, to *Joseph Walton,* and twenty-three other persons, for twenty-four thousand acres of land. In the year 1765, a partition of the patent was made among the then proprietors ; and for the purpose of making the partition, a deed in trust was executed to *Abraham Walton,* who covenanted, on his part, to execute releases in fee, to the respective owners of the lots, according to such partition. This deed contained a recital, that the parties of the first part had, by sundry mesne conveyances, become seised of the lands granted by the patent, in

NEWYORK, the proportions therein mentioned, according to which lot No. 15.,
October, 1816. including the premises in question fell to *Cadwallader Colden,*
who was a party to the deed, and from whom *Cadwallader R. Colden* derives his title. Eight of the original patentees were parties to this deed; so that, as to eight twenty-fourth parts of the premises, the title was clearly conveyed to *Abraham Walton.* It was admitted upon the trial, that the patent was generally settled, and held under, and according to, this partition. These facts, after such a lapse of time, are sufficient to presume a title to the whole of the premises in the heirs of *Abraham Walton,* or that he had executed the trust, and conveyed in severalty, to the respective owners; and in either case, the title would be thus proved in some of the lessors. The principles laid down and adopted by this court, in *Doe* v. *Phelps,* (9 *Johns.* 171.,) and *Doe* v. *Campbell,* (10 *Johns.* 475.,) are directly in point, and would fully warrant a judgment for the plaintiff, were it not for the adverse possession on the part of the defendant. The lessor, *Cadwallader R. Colden,* can claim no benefit from his infancy; for the statute, if it has run at all, began to run in the lifetime of the ancestor, and the facts disclosed upon the trial show a very strong case of adverse possession. As early as the year 1775, possession was taken of one hundred acres of lot No. 15. under a lease from *Anthony Farrington.* This lease was not produced upon the trial, but its loss and contents were sufficiently proved, and appeared to be a lease in fee, at a nominal rent. And although there was no legal transfer of the lease to *Perkins,* yet he, in the year 1778, took possession, claiming under it, and continued such possession, except while it was interrupted by the war, until the year 1798, when he sold and conveyed to *Solomon Williams,* who, in 1803, conveyed to *Comstock;* and in 1804, *Comstock* conveyed to the defendant. These facts show, very satisfactorily, such an adverse possession as will protect the defendant against the present action, and upon this ground alone judgment is given for the defendant.

<div style="text-align:right">Judgment for the defendant.(*a*)</div>

---

JACKSON
v.
MOORE.

(*a*) In the case of the same lessors *against John Parish,* the premises in question were a part of the land formerly held by *Perkins;* and judgment was also given for the defendant, on the ground of adverse possession. But in the five other causes, at the suit of the same lessors, depending on the same case, judgment was given for the plaintiff, as no adverse possession was attempted to be set up.