MARX OTTINGER AND MOSES OTTINGER, APPELLANTS, *v.* LOUIS STRASBURGER, RESPONDENT.

*Purchaser of real estate — what title he will be compelled to accept — when a title founded on adverse possession must be accepted.*

In 1788 certain premises in the city of New York were conveyed by the sheriff to one Beekman, who died in 1789, leaving a will by which he devised them to A. K. Beekman, who died in 1816, leaving a will by which he devised them with other property to his executors to collect the rents, pay debts and divide the real estate not sold into seven equal parts. He authorized them to sell and convey his real estate. No conveyance on the part of the executor was shown. In 1836 an action of partition was commenced between the Beekman heirs to divide the real estate still unsold. No reference was made therein to these premises.

In 1821 one Thompson entered into possession of the premises, and continued to occupy them personally, or by his tenants, to the time of his death in 1870. The premises were assessed to him in 1824, and he thereafter paid taxes thereon. Thompson's executor collected the rents until 1882, when under a power of sale in Thompson's will he conveyed the premises to the plaintiffs, who contracted to sell them to the defendant. The defendant refused to complete his purchase upon the ground that the executor's title was defective.

*Held,* that the title was good and that the defendant should be compelled to accept it.

APPEAL from a judgment in favor of the defendant, recovered on a trial at the Special Term.

*F. R. Minrath,* for the appellants.

*David S. Walter,* for the respondent.

DANIELS, J.:

The appeal has been taken from a judgment denying the right of the plaintiffs to a specific performance of a contract entered into between themselves and the defendant, for the sale of a lot of land

on the corner of Baxter and Hester streets in the city of New York. The contract was entered into on the 15th of February, 1882, and the plaintiffs covenanted therein to execute, acknowledge and deliver to the defendant or his assigns "a proper deed containing a general warranty and the usual full covenants, for the conveying and assuring to him or them the fee simple of the said premises, free from all incumbrances except" a lease, etc. The plaintiffs were ready and willing to deliver the deed to the defendant in the form mentioned in the contract, but he refused to accept and receive it for the reason that the title of the plaintiffs to the land was deemed to be defective. They received their title from Samuel Hall, as the executor of the last will and testament of Robert Thompson, who died in or about the year 1870. The deed to the plaintiffs was given on or about the 28th of February, 1881, and in form conveyed to them the title to the property in dispute.

But it was made to appear that Thompson, the testator, had no record title whatever to the property, and to establish his right to the premises proof was given of their possession by him commencing about the year 1821. Before that, and on the 1st of April, 1788, it was shown that the premises had been conveyed by a sheriff's deed to Abraham Beekman, who did not appear to have disposed of them in any form during his lifetime. He left a will at the time of his decease, which occurred in or about the year 1789, by which these premises were devised to Abraham K. Beekman. The latter died in or about the year 1816, also leaving a will by which this and other property was devised to his executors in trust to collect rents, pay outstanding debts and divide the real estate not sold into seven equal parts, with full power of sale and conveyance. Whether his executors ever in fact conveyed this property under this power of sale was not positively shown, but from the history given of it, it appears to have been next found in the possession of Robert Thompson. And that possession was proved to have continued either by the actual occupancy of Thompson or the renting of the property under his authority, from the year 1821 to the time of Thompson's decease, which was about the year 1870. After that it was in like manner rented and the rents collected by the executor of his estate, the grantor in the deed to the plaintiffs. This long and continuous occupancy of the property, prior to the conveyance by Thompson's

executor, extended through the period of sixty years, and it was further shown that while Thompson was in possession he claimed to own the property, and in addition to that his acts were those of an asserted ownership.

This continued possession was all that could be required to vest a title in the property by means of an adverse holding. And from it and its long continuance a presumption arises that the property was in fact conveyed under the power of sale contained in the will of Abraham K. Beekman, by his executors, to Thompson, for so long a possession creates the presumption of a grant to the person holding the property. (*Cahill* v. *Palmer*, 45 N. Y., 479, 485 ; *Ward* v. *Warren*, 82 id., 265, 268 ; *Woolsey* v. *Morss*, 19 Hun, 273.)

And the fact that such a conveyance of the property had been actually delivered by these executors to Thompson is confirmed by an action of partition commenced in 1836 and terminated in 1839, by James Beekman and another as plaintiffs against Stephen Van Courtlandt and others, who were all the heirs, devisees and their descendants of Abraham K. Beekman. By the judgment in this action all the real estate which had not been disposed of or distributed by the executors of Abraham K. Beekman, was partitioned between his heirs, devisees and their descendants. But this judgment in no manner referred to these premises, and that omission indicates a very strong probability that they had been previously conveyed and disposed of, for otherwise they would have formed a necessary part of the subject of that action. And as no person other than Thompson appears to have claimed any title to the property, it is to be presumed that in their disposition the premises had been conveyed to him. And that presumption was rendered entirely controlling by the long possession of himself, his agent and his executor, and left no reason for doubting his ownership of the property. If a title by means of such a possession, fortified by the presumption arising from the form of the judgment in partition, can ever become absolute and capable of being conveyed in fulfillment of a contract of this description, this was such a title. For it enabled the plaintiffs, as the grantees of the executor of Thompson, to do what they had covenanted should be done by their contract, which was to convey to the defendant the fee simple of the premises free from all incumbrances except a lease.

Whether a title depending upon oral proof to establish it by means of adverse possession should be directed to be taken in fulfillment of a contract of this nature, was considered in *Hartley* v. *James* (50 N. Y., 38), where it was said in a general way that "the plaintiff was not bound to accept a title resting upon adverse possession." (Id., 42.) But this point was not included in the case as it was presented to the court, and the statement made concerning it therefore is not entitled to be followed as authority. The same point was incidentally also considered in *Mott* v. *Mott* (68 N. Y., 247), where a doubt was expressed whether a purchaser could be compelled to take a title depending upon adverse possession and parol proof to support it, unless in a case beyond all reasonable doubt. (Id., 258.) The opinion in that case was delivered by the same judge who delivered the opinion of the court in the preceding case, and it is evident from this expression that the earlier case was not regarded as controlling upon this subject; and of the existence also of the further conviction that where the title was free from all reasonable doubt that a purchaser under a contract might be obliged to accept it. In *Shriver* v. *Shriver* (86 N. Y., 575) the point was again considered by the same court, and although not determined the opinion was clearly intimated that a vendee in a contract of this nature would be obliged to accept such a title. The standard of its certainty there adopted was that the proof should be so clear, as to the ability of the vendor to convey the title, as to render it the duty of a court to instruct a jury to find the fact of its existence. And when that may be the state of the proof it was considered that the vendee should be compelled to accept the title. (Id., 584, 585.)

It was further added that a mere possibility that the vendee's title might be questioned was not sufficient to justify him in rejecting it. And the same point was ruled substantially in like manner in *Belmont* v. *O'Brien* (2 Kern., 394), where it was held that the purchaser could not decline a title offered to him by reason of the existence of two mortgages remaining unsatisfied of record, one of which had been given sixty-six years and the other eighty-four years previously. (Id., 400.) In *Schermerhorn* v. *Niblo* (2 Bosw., 161), which presented for consideration this precise point, it was held that "a bare possibility that the title may be affected by existing causes which may subsequently be developed when the highest

evidence of which the nature of the case admits, and evidence amounting to a moral certainty is given that no such cause exists, will not be regarded as a sufficient ground for declining to compel a purchaser to perform his contract." (Id., 165.)

The proof of this long continued possession and use of the property establishes the further fact that no heir of Abraham K. Beekman could, by the addition of any period of infancy, entitle himself to a recovery of this estate. What the law required at the time when Thompson's possession commenced for the acquisition of a title by means of adverse possession, was the continuation of that possession for a period of twenty-five years.

Abraham K. Beekman died, as already stated, in the year 1816. If he left infant heirs they were in being at that time, and whatever the period of minority may have been would have lapsed within twenty-one years after that time. And in addition to that the twenty-five years of continued possession required by the statute then in force would also have expired prior to the time when the executor of Thompson conveyed the property to the plaintiffs. And that was clearly sufficient to extinguish all claims of all infant heirs of this owner, if any had been left by him at the period of his decease, and to perfect title by possession in Thompson. The statute in cases of this nature does not, and did not, permit of cumulative disabilities. (*Peck* v. *Randall*, 1 Johns., 165, 176; *Becker* v. *Van Valkenburg*, 29 Barb., 319; *Fleming* v. *Griswold*, 3 Hill, 85; *Jackson* v. *Moore*, 13 Johns., 513; *Bradstreet* v. *Clarke*, 12 Wend., 603.)

The consequence, therefore, is that if either of the heirs of Abraham K. Beekman was an infant child the suspension of the application of the statute would not be permitted to extend beyond the completion of his or her minority. But it would begin to run as soon as the infant heir or heirs of Abraham K. Beekman attained the age of twenty-one years; and would then continue, as the party in possession of the property was undisturbed until the statutory period had expired, and that would operate as an extinguishment of every possibility previously existing upon which Thompson's title could have been questioned or disturbed. This possession, together with that of the executor, did continue for so long a period as to exceed any possible minority and the statutory time required to complete an adverse possession. There was not even a bare possibility,

therefore, that the right of the plaintiffs to this property could be in any form questioned. It had become as fixed and determined as any title well could be, depending on long continued possession and the presumption of the law arising from it that the possession had originated in a grant of the property. It further appeared that the property had been assessed to Thompson as the owner from the year 1824, and that he had paid the taxes upon it, which is an additional circumstance confirmatory of the conclusion that his title was entirely indefeasible. It had become all that the plaintiffs had obligated themselves to convey, and the defendant should have been required to accept it and pay the purchase-price. And as these facts were all found by the learned justice before whom the trial took place, and are completely sustained by the evidence, the judgment entered upon his direction should be modified so that judgment will be directed in favor of the plaintiffs requiring the defendant to receive and accept the property in controversy.

The plaintiffs should also have their costs upon this appeal.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment modified as directed in opinion, with costs to plaintiff on this appeal.