All the judges concurring for reversal except Lott, J.

Order reversed, and judgment absolute for the plaintiff.

Julia F. Foot, Appellant, *v.* Charles H. Farrington, Respondent.

Under the Revised Statutes, a party had six years after his discovery of a fraud upon him, in which to bring his suit in equity, although there was a concurrent remedy at law. Mason, J.

But the Code has restricted the rule, dating the time of limitation from the discovery of the fraud, to cases *solely* cognizable in equity; and, under it an action for fraud must be commenced within six years from the commission of the fraud, irrespective of the time of its discovery by the aggrieved party.

Accordingly, where, in May, 1854, the plaintiff's assignor, in buying out his partner (the defendant), agreed to pay him the amount of capital put in by him, and his share of the profits, after deducting what was charged against him on the books, and by the fraud of the latter, who was the book-keeper of the concern, a considerable sum charged against him on the books was suppressed, and consequently, he was, to that amount, overpaid, which fact was not discovered until some years after; in an action brought by the plaintiff on the 4th of March, 1861, to have an accounting of the partnership affairs of her assignor and the defendant, and that the latter be decreed to repay to her the amount so fraudulently received by him.—*Held,* that the action for an accounting would not lie, and, as to the fraud, it was too late.

(Argued June 23d, 1869, and decided September 25th, 1869.)

Appeal from a judgment of the Supreme Court, at General Term, in the fifth judicial district, affirming the dismissal of the complaint by the referee.

David Y. Foot and the defendant, Farrington, had been partners in a drug store in March, 1854. Foote agreed to buy Farrington's interest. The basis of the trade was this: Farrington was to be credited with $1,000 of capital, which

he had contributed to the concern, and with his share of the net profits, and he was to be charged with what he had drawn out, as would appear by the account against him on the books.    Foot was to pay him the difference for his interest, and indemnify him against the debts.

Farrington, who was the book-keeper, made up the statement on the foregoing basis, but he fraudulently suppressed and canceled a page of the ledger, where he was charged with the sum of $1,123.27, which ought to have been deducted from his credits, but was not ; consequently, on the purchase of his interest in the concern, the plaintiff paid him the sum of $2,500, when he ought not to have paid him but $1,376.73.    The transaction took place between six and seven years before this suit was commenced.    The fraud was *discovered* within the six years.    The plaintiff is a purchaser at auction of all David Y. Foot's effects, and choses in action from his assignee in trust for creditors.    The action was commenced 4th of March, 1861.

The referee, at the trial, and the Supreme Court on appeal, held the action barred by the statute of limitations, and that is the only question.    By consent, at the trial, the complaint was deemed amended, so as to demand any form or kind of equitable relief which the facts would justify.

The following are the allegations and prayer of the complaint :

The above named plaintiff, Julia F. Foot, by Dillaye & Richardson, her attorneys, complaining against Charles Farrington, the above named defendant, shows to the court that she is informed and believes :

That prior to the spring of 1854, David Y. Foot and the above named Charles Farrington were druggists, doing business as partners, in the city of Syracuse, in the State of New York.    That early in the month of May, 1854, a negotiation was opened between them, by which the said David Y. Foot proposed to buy out, and the said Farrington to sell out his interest in said partnership business.    That the basis upon which the said negotiation was formed was substantially as follows :

First. That said Farrington should be credited with the amount of his investment, which was $1,000.

Second. That he should also be credited with his proportion of the net profits, as then estimated by them.

Third. That said Farrington should be charged with the amount of his account charged to him on the books of Foot & Farrington, and that that sum should be deducted from the aggregate sum made up by the investment and the estimated net profits.

Fourth. That said Foot should pay him the difference shown by such deductions, for his said Farrington's interest in said business, and give him a bond indemnifying him against the debts of said Foot & Farrington.

And the plaintiff further states, on information and belief that the said Foot & Farrington having thus agreed on a basis for the purchase and sale of said Farrington's interest in said business, the said defendant Charles Farrington, who had at all times kept the books of the said firm of Foot & Farrington, and who was a capable, expert and accomplished book-keeper, undertook to and did make out the statement by which said bargain and sale was to be consummated.

That in making up the statement, the said Farrington represented to the said Foot that his, said Farrington's account standing on the books of Foot & Farrington, amounted to about the sum of $1,500 to his debit, and that for the purpose of satisfying said Foot, who was not familiar with book-keeping, and who was not competent to examine into and ascertain for himself, the true state of said Farrington's account, said Farrington turned to the page (represented in the alphabetical index to the ledger), in the ledger where his account appeared to be represented, and showed by such ledger account, that there was standing against him about the sum of $1,500; and the said Farrington represented to the said Foot, that such was the amount of his account falsely, fraudulently, and with the intent of cheating and defrauding the said David Y. Foot, suppressing and concealing the fact that there was another page of accounts standing on said ledger

against him, the said Charles Farrington, which amounted in
the aggregate to a large sum, to wit, to the sum of $1,123.27;
and the said Farrington, the better to conceal the existence
of said last named account, and to deceive the said David Y.
Foot, who was not skilled in book-keeping, or competent to
examine into the intricacies of accounts, did not index the
said last mentioned page of accounts on the alphabetical
index of the ledger, so that in looking for said Farrington's
account, there would be nothing in the index to show that
such an account existed in the ledger, as the one last above
mentioned, and the existence of which the said Charles Far-
rington fraudulently concealed from the said David Y. Foot,
with intent to cheat and defraud him.

And the plaintiff further says, on information and belief,
that the index to a ledger is the usual, ordinary, and common
means by which an account is found on a ledger, and that
in exercising ordinary care, a person of common intelligence
would not look for the existence of an account, which was not
indexed in the alphabetical index to a ledger.

In further complaining, the plaintiff says, that at the time
when said negotiation for sale was commenced, and when
finally the sale was consummated, the said account amount-
ing to the said sum of $1,123.27, covering nearly the whole
page on the ledger, was not extended, or a single line of it
extended, so that the amount of said account could not have
been ascertained, at the time the sale was consummated, and
could not have entered into the estimate upon which the sum
agreed to be paid by said Foot to said Farrington for his
interest in said business was settled and fixed.

And the plaintiff further says, on information and belief,
that the said Charles Farrington did specifically fix upon the
account indexed in the ledger's alphabetical index, and which
amounted to about $1,500, as the amount of his account;
and that that account and that amount, and that account and
that amount only, entered into the figures, estimate and con-
sideration, upon which the said David Y. Foot agreed to buy
out the interest of said Farrington in said business; and that

upon that basis, after so estimating said Farrington's account, he fraudulently concealing the fact that there was another large account against him, the said Foot agreed to pay, and paid the said defendant, $2,500 for all his right, title, and interest in said business, books and demands, thus paying and the said Farrington receiving $1,123.27 more than the said Farrington would have received or been paid, if he had not fraudulently concealed from said David Y. Foot the existence of that sum in the said ledger of the accounts of said firm of Foot & Farrington.

And the plaintiff in further complaining says, on information and belief, that the said Charles Farrington fraudulently, and with intent to cheat and defraud David Y. Foot, concealed from him the existence of said account for $1,123.27, and by such fraud and concealment induced the said David Y. Foot to pay him, the said Farrington, the sum of $2,500, when in point of fact he should not have paid him but the sum of $1,376.73; whereby the said Charles Farrington, by reason of said fraud and deceit, became and was indebted to said David Y. Foot in the sum $1,123.27, and interest from the 6th day of May, 1854.

And the plaintiff, in further complaining, shows to the court, that the said David Y. Foot thereafter, to wit, in the month of October, A. D. 1855, duly assigned, sold, transferred and conveyed all his property, actions, demands and rights of action, of every name and description, to Stephen D. Dillaye, in trust for the benefit of his creditors, and that the said Stephen D. Dillaye duly accepted the said trust, and took possession of all the books and property, and became vested with all the rights of action which in anywise pertained to the said David Y. Foot.

And the plaintiff further says, that Stephen D. Dillaye, as such assignee, thereafter, to wit, on or about the 12th day of November, A. D. 1860, duly sold at public auction all the effects, property, demands, actions and rights of actions, he held, as such assignee of David Y. Foot; and that the said Julia F. Foot, on such sale, was the highest bidder for and

became the purchaser of all the effects, property, demands, actions and rights of actions, of the said Stephen D. Dillaye, as such assignee of David Y. Foot.

And the plaintiff further says, on information and belief, that the said account against the said defendant, Charles Farrington, so standing on the books of Foot & Farrington, unextended and not entered upon the alphabetical index to the ledger in which it was contained, and which amounted to the said sum of $1,123.27, was not discovered and did not become known until after the books, property, actions and rights of actions, were transferred by said assignment of said David Y. Foot to said Stephen D. Dillaye, by any one who was interested in said accounts, actions and rights of actions, or by any one who made it known to any one so interested; and that the said fraud was not discovered and did not become known until the 9th of December, 1855, and that the reason said fraud did not become known and was not discovered, grew out of the fact, that after said dissolution of the said firm of Foot & Farrington, the ledger containing said account was only resorted to for the purpose of settling accounts, and then only such accounts were looked at, as appeared upon the alphabetical index to said ledger.

And the plaintiff further says, that the said purchase so made as aforesaid was made with money, which belonged to her in her own right, and which she had and possessed as her sole and separate property; and that she is now the owner and holder of the said cause of action hereinbefore set forth.

Wherefore, the plaintiff demands judgment that the said defendant be required to account with the said plaintiff of all the dealings and transactions in respect to the said partnership, hereinbefore mentioned, between the said David Y. Foot and the said Charles Farrington, as such partners as aforesaid, and that the said defendant may be decreed to pay to the plaintiff such sum as may be found on said page of said ledger, not taken into account at the time of said sale, as set forth in the complaint; and, also, that he may be required to pay to the plaintiff all other such sum or sums as may be

found on an examination of the accounts of the said David Y. Foot and the said defendant, not to have been included in the account upon which said purchase was made ; and that the plaintiff may have such further or other relief in the premises as the nature and circumstances of the case may require.

*George F. Comstock,* for the appellant.

*Daniel Pratt,* for the respondent.

MASON, J.   The Revised Statutes provided that bills for relief, on the ground of fraud, shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time (2 R. S., 301, § 51) ; and this statute was held to give six years after the discovery of the fraud, on a bill filed, in cases where there was a concurrent remedy at law. (*Mayne* v. *Griswold,* 3 Sandf. S. C. R., 463 ; 1 Edw. Ch. R., 343.) The Code seems to have changed this rule, and limits the action for relief on the ground of fraud, in such cases, to that class of actions, which were solely cognizable by a Court of Chancery.

The language of the sixth subdivision of section ninety-one of the Code, reads as follows : "An action for relief on the ground of fraud, in cases which heretofore were solely cogniz- able by the Court of Chancery, the cause of action in such case not to be deemed to have accrued, until the discovery by the aggrieved party, of the facts constituting the fraud." (Code, § 91, sub. 6.)

This action was not solely cognizable by a Court of Chan- cery.   The jurisdiction in Chancery was concurrent.   The plaintiff could obtain complete relief in a court of law, upon the facts appearing in this case.   The case does not fall under the ninety-seventh section of the Code, which provides that an action for relief not heretofore provided for, must be commenced within ten years after the cause shall have accrued.

The case is provided for by the fifth subdivision of section ninety-one of the Code.

In an action at law, the plaintiff was limited to six years, and could not help his case out by alleging a discovery of the fraud within six years. (20 J. R., 48; 17 W. R., 202.)

The judgment of the Supreme Court must be affirmed.

DANIELS, J. The fraud, which the defendant perpetrated upon his copartner on the 6th day of May, 1854, was the legal basis on which the plaintiff's right to maintain this action depended; and that consisted of such misrepresentations and concealments as related to the account contained on an unindexed page of the ledger, the existence of which was unknown to the other partner. No other fraud was alleged in the case or admitted on the trial, and no proof, beyond the admissions made, was given by either party. It was by means of those concealments and representations, and they were affirmative and positive in their character, that the copartner, who was deceived by them, was induced to pay a larger amount for the defendant's interest in the business and property of the firm than he was legally bound to pay, upon the understanding under which the sale was made. In consequence of the deception, which he successfully practiced upon his copartner, the defendant received, for his interest in the firm, the sum of $1,376.73 more than he was entitled to have according to the spirit and intent of the agreement. As no other fraud was alleged in the complaint or disclosed by the admissions made, nothing was shown that would support the demand for a general accounting. The right of the plaintiff to redress was, consequently, confined to the concealments and misrepresentations already mentioned, relating to the state of the defendant's own accounts with the firm.

The existence of the fraud, which the defendant had perpetrated, was discovered in December, 1855, after the defrauded partner had made a general assignment for the benefit of his creditors, and had, consequently, put it out of his power to restore what he had received under the contract of sale, for the purpose of rescinding it. But if that had not been the case, and it had been designed to rescind the sale on account

of the fraud, no reason was alleged or shown that would have justified the delay intervening between that time and the commencement of the action or the time of the trial, which took place in July, 1868, when the first indication of the existence of that design was given by an amendment of the complaint. This was too long a period of indecision to be consistent with the continued existence of a right depending upon the obligation of the injured party to act promptly upon the discovery of the fact entitling him to it. The right to rescind a contract, imposed upon a party by fraud, must be exercised within a reasonable time after the discovery of the fraud, otherwise it will be altogether lost. That was neither done nor attempted in this case until the party, by his inability and neglect, had deprived himself of the power of doing it.

When this action was commenced, which was more than five years after the discovery of the fraud, it was in the form of an action at law for the recovery of the damages occasioned by the fraud. And that was the only form in which it could at that time have been maintained, even if the statute of limitations had not then stood in its way. For the delay, after the discovery of the fraud, had been too great to allow the contract then to be rescinded, even if the power of returning what had been received under it had not ceased to exist. The right to bring the suit in the form which was given to it, accrued when the fraud was perpetrated, for the damages resulting from it were all sustained at that time. And for that reason, the statute, prescribing the time within which the action for that purpose should be brought, then became applicable to the cause of action that had then accrued, within the plain meaning of the law, even though it was not known to the person entitled to enforce it against the defendant. And it arose out of a liability, express or implied, within the meaning of those terms, as they were made use of in subdivision 1, § 91 of the Code. This term, "liability," is broad and comprehensive in its signification; sufficiently so, to include causes of action of this description. And as used in this section, it was intended to be distinguished from the

liability of parties arising out of their voluntary contracts and obligations. For they were provided for by the other terms made use of, which included contracts and obligations, both express and implied. The term liability must, therefore, be held to include demands of the nature of that involved in the present case; for it can perform no other office in the connection in which it stands, and it is well adapted to that purpose.

That was the use made of it in the previously existing law, from which the present one clearly appears to have been drawn. Under that, actions of this description were included in the designation of actions on the case, founded on a liability express or implied. (2 R. S., 224, § 18, sub. 4.) And no further change seems to have been made in that provision than was actually required to adapt it to the change in the practice, and in the legal designation of actions made by the Code, which, by a well settled rule of law, should produce no change in the actual construction of the statute. (Sedgwick on Statutory and Constitutional Law, 428, 9; *Douglass* v. *Howland*, 24 Wend., 35, 47.)

By including the action within the legal signification of that term, it was one which, under the present, as well as the previous law, should have been commenced within six years from the time when the cause of it actually arose. That is the plain meaning of both these statutes (2 R. S., 224, § 18; Code, §§ 74, 91); and the former was so construed by the courts. (*Leonard* v. *Pitney*, 5 Wend., 30.; *Harker* v. *Mayor*, &c., 17 Wend., 201.) And that exposition is equally as applicable to the latter, on account of the substantial identity of its provisions. No reason existed rendering a change desirable in the law upon this subject, and none can be supposed to have been intended from the language used in the codification. As this action was not commenced within the period prescribed for bringing suits of this description, it was plainly barred within the direct terms of the statute.

In no view that can be taken of the case, was it one that, under the former practice, was solely cognizable in equity,

and for that reason, within subdivision 6, § 91 of the Code. And, as it was included within the fair import of subdivision 1, of that section, it was as clearly not an action for relief within the meaning of section ninety-seven, which, by its express terms, was only applicable to such cases of that nature as had not been previously provided for. As the decision made by the referee was in no view of the case erroneous, the judgment should be affirmed.

All the judges concurring in the result.

Judgment affirmed.