## SWEARINGEN VS. ROBERTSON.

*Statute of Limitations.*

In case of an adverse possession of land, when the statute of limitations begins to run against the ancestor, it will continue to run against the heir, although he is under the disability of infancy when the right accrues to him. R. S., ch. 138, sec. 13.

APPEAL from the Circuit Court for *Columbia* County.

Ejectment, commenced July 7, 1874. Plaintiff (who brought suit by her guardian *ad litem*) showed that she was the daugter of Thomas A. Swearingen, deceased; that the latter died in 1855; and that she was in her twentieth year at the commencement of this action; and she introduced in evidence a patent from the United States to the said Thomas A. Swearingen of the premises in controversy.

Defendant, having pleaded the statute of limitations, introduced evidence tending to prove that the land was sold for taxes in 1850, and a tax deed was issued thereon to one Wood, in 1853; that Wood conveyed the premises to Thomas Robertson Sen., by quitclaim deed, dated February 6, 1854, and recorded March 16, 1854; that said Robertson also obtained a sheriff's deed of the premises in March, 1854, upon a sale under a judgment in his favor against Thomas Swearingen; that said Robertson went into possession of the premises in 1853, and remained in possession until his death in 1872; that he devised his real estate to his son *Thomas Robertson Jr.*, the defendant, who went into possession in 1872, upon the death of his father, and had remained in possession ever since.

Plaintiff introduced some evidence in rebuttal, tending to invalidate the tax deed and sheriff's deed above mentioned.

The court charged the jury, among other things, as follows: " In relation to the statute of limitations, I charge you that if you find that Thomas Robertson went into the possession

of the land before the death of Thomas A. Swearingen, and that those deeds [the sheriff's and the tax deed] were executed to Robertson before Swearingen's death, and that Thomas Robertson continued in the adverse possession of the land from the time he entered, or from the time of the execution of those deeds, and for ten years thereafter continuously, the statute of limitations ran in his favor, and this action cannot be maintained."

Verdict and judgment for defendant; and plaintiff appealed.

*T. L. Kennan,* for appellant, contended that, even if the statute of limitations began to run against Thomas A. Swearingen during his life, it would not continue to run on against his heir laboring under disability. Such a construction would defeat the very object of the law in a large class of cases. Sec. 13, ch. 138, R. S., was enacted as a general exception or saving clause for the protection of all persons laboring under any of the disabilities therein named. That portion of the section which says: "If a person entitled to commence any action for the recovery of real property, etc., be, at the time such title shall first descend or accrue, within the age of twenty-one years," etc., means when the title shall first descend or accrue *to him,* that is, to the person within the age of twenty-one years, or under the disability. It does not say when the *right of action* first accrues, but "when the *title* shall first *descend* or accrue." Had the legislature intended to make an exception of all cases where the statute of limitations should commence to run against a person not under disability, they would have expressed it in the statute. It is conceded that when a statute of limitations once begins to run against a person not under disability, any subsequent disability will not suspend it, and this doctrine has caused some judges to fall into the error of holding that where the statute has begun to run against the ancestor, it continues to run against the heir, notwithstanding the title descends to one under disability. It is certain that our statute does not say

that, and equally certain that it does not mean that.    The saving clause in the statute of Kentucky is not worded exactly like ours, but its meaning is the same.    See title 117, p. 1125, vol. 2, Kentucky Statutes of 1834.    And the supreme court of that state, in a very carefully considered case, say: "The English statute saves the right or title of entry of those who were or shall be infants, etc., 'at the time when said right or title first descended, accrued, come or fallen.'    *    *    * From the expressions used in the saving clause of the English statute, it obviously relates to the time when the right first accrued, and the courts of that country have properly extended it only to the persons to whom the right then accrued, and not to those to whom it should afterwards come.    *    *    *    But the saving in our statute evidently relates to the time when the right accrues or comes to those laboring under the disabilities therein mentioned, and not to the time when the right first accrued to those under whom they derive their right." *Machir v. May*, 4 Bibb, 44, sustained and confirmed in *Sentney v. Overton*, id., 445.    See also *Floyd's Heirs v. Johnson*, 2 Litt., 114, where the chief justice uses the following language:    "We have not forgotten that it has been decided by this court that under our statute, if a right of action accrues to one laboring under no disability, and by his death the right descends upon his heir, who does labor under some disability, the right of the latter will be saved until ten years after such disability is removed; but we have never decided that one disability can be added to another."    And such is the true construction of the statute of Wisconsin.

*J. H. Rogers*, for respondent:

Adverse enjoyment began under both sections of the statute during the lifetime of Thomas A. Swearingen, and the running of the statute of limitations was not suspended by his death, and the infancy of the heir would not stop the running of the statute, or in any way extend the limitation.    *North v. Hammer*, 34 Wis., 425; *Demarest v. Wynkoop*, 3 Johns. Ch.,

129; *Eager v. Commonwealth,* 4 Mass., 182; *Jackson v. Moore,* 13 Johns., 513; *Jackson v. Robins,* 15 id., 169; *Bucklin v. Ford,* 5 Barb., 393; *Carpenter v. Shermerhorn,* 2 Barb. Ch., 314; *Butler v. Howe,* 1 Shep., 397; *McFarland v. Stone,* 17 Vt., 165; *Downings' Heirs v. Ford,* 9 Dana, 391; *Doe v. Barksdale,* 2 Brock., 439; *Den v. Richards,* 3 Green, 347; *Fewell v. Collins,* 3 Brev., 286.   Sec. 13, ch. 138, R. S., has not changed the rule.   That section is nearly an exact transcript of the New York statute, which had long ago received the same construction as that put upon ours by the court below.   *Fleming v. Griswold,* 3 Hill, 85.   This decision was in 1841, before our statute was adopted.   The statute, having been enacted and construed by the courts of New York before adoption here, must be received with the construction there placed upon it.   *Draper v. Emerson,* 22 Wis., 147.

COLE, J.   The controlling question in this case arises upon the statute of limitations.   The circuit court instructed the jury, in substance, that if they found that adverse possession began to run against the ancestor of the plaintiff, it continued to run against the plaintiff, notwithstanding she was under the disability of infancy when the right accrued to her.   If the court was correct in this construction of the statute, the action cannot be maintained.   The provision under which the question arises, reads as follows:   "If a person entitled to commence any action for the recovery of real property, or to make an entry or defense founded on the title to real property, or to rents or services out of the same, be, at the time such title shall first descend or accrue,   *   *   *   within the age of twenty-one years,   *   *.   *   the time during which such disability shall continue shall not be deemed any portion of the time in this chapter limited for the commencement of such action, or the making of such entry or defense; but such action may be commenced, or entry or defense made, after the

time limited, and within five years after the disability shall cease, or after the death of the person entitled who shall die under such disability; but such action.shall not be commenced, or entry or defense made, after that period." Sec. 13, ch. 138, R. S. With the exception of some verbal changes or alterations which do not affect the meaning, this provision is a transcript from the statutes of New York (2 R. S., N. Y., 1829, p. 295, sec. 16). Says KENT, C. J., in *Peck v. Randall,* 1 Johns., 165, decided in 1806: "The general rule is, that when the statute of limitations once begins to run, it continues to run, notwithstanding any subsequent disability." p. 176. The case of *Jackson v. Moore,* 13 Johns., 513, decided in 1816, holds that "where an adverse possession begins to run in the lifetime of the ancestor, and descends to an infant heir, the latter is not protected by his disability." In *Fleming v. Griswold,* 3 Hill, 85, decided in 1842, the court said they "considered the rule entirely settled, that when the statute has begun to run against the ancestor or other person under whom the plaintiff claims, it continues to run against the plaintiff, notwithstanding any disability when the right accrues to the latter." And the court remarked that the revised statutes, or sec. 16 above referred to, had not changed the law on the subject, and declined to hear the question discussed.

The provision under consideration will be found in the territorial revision of 1839, and the revision of 1849 (Territorial Statutes of 1839, p. 260, § 13; R. S. 1849, ch. 127, sec. 12). When it was first adopted in New York we are unable to say; but it will be seen that long before it was enacted here it was well settled in that state, as it was in England, that if an adverse possession commences in the lifetime of the ancestor, it will continue to run against the heir notwithstanding any existing disability on the part of the latter when the right accrues to him or her (*Jackson v. Robins,* 15 Johns., 169); and this uniform construction of the statute of limitations ought not now to be disturbed. We must presume the law was en-

acted here in view of this judicial construction and generally received opinion on the subject.   See Tillinghast's Ballantine on Lim., p. 59 and notes; Adams on Eject., p. 99; Angell on Lim., § 477.

We were referred by counsel for the plaintiff to some decisions in Kentucky in support of the position that though the statute had begun to run against the ancestor of the plaintiff, still it did not run against her after his death, by reason of her disability.   But the saving clause in the statute of that state was in favor of those who were or shall be infants, etc., "at the time when the said right or title accrued or coming *to them.*"   And it has been held that "if the statute begins to run against the ancestor, but by his death the land descends to his heirs, who are infants, the statute does not run on, but the infants shall have the time allowed by the statute after arriving at full age to bring this action."   *Machir v. May*, 4 Bibb, 43; *May's Heirs v. Bennett*, 4 Litt., 314; *McIntire's Heirs v. French's Heirs*, 5 id., 35.   In *Machir v. May*, Boyle, C. J., points out the difference between the English and Kentucky statutes, and shows that the saving clause in the former relates to the time when the right *first* accrued; while in the latter "it evidently relates to the time when the right accrues or comes to those laboring under the disabilities therein mentioned, and not to the time when the right *first* accrued to those under whom they derive their right."   This, of course, is a most important difference.   Our statute is similar to the English statute, the saving clause only extending to the person on whom the right *first* descends or accrues.

It follows from these views that the ruling of the circuit court was correct; and the judgment must therefore be affirmed.

*By the Court.* — Judgment affirmed.