The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concur.

---

## SUPREME COURT.

### CAROLINE C. PIPER agt. JOHN L. HOARD.

*Statute of limitations — Action to set aside a deed for fraud — Period of limitation — Long continued undue influence does not affect the operation of the statute.*

Under section 91 of the Code of Procedure a party has six years in which to bring his suit in equity to set aside a deed on the ground of fraud, dating the time of limitation from the discovery of the fraud.

Accordingly where the deed from F. P. to the defendant was dated March 26, 1859, and was recorded September 20, 1859; and in January, 1860, a suit was commenced in the name of F. P. to set aside said conveyance as fraudulent and obtained by undue influence, and shortly thereafter the defendant, through undue influence and fraud, compelled F. P. to discontinue said suit, and an instrument was executed providing for an arrangement and settlement of all differences and difficulties, the same being dated October 11, 1860. The plaintiff was born on the 6th of February, 1860; F. P. died on the 9th of March, 1860; the plaintiff became twenty-one years of age on the 6th of February, 1881. In an action commenced on the 19th of February, 1881, by the plaintiff, who is a daughter of F. P., to have the deed from him to defendant declared fraudulent and void:

*Held,* 1st. That the relief demanded is purely equitable in its nature, for a court of equity alone has power to entertain actions to set aside or annul conveyances and agreements on the ground of fraud.

2*d.* There was a period of sixteen years, during any part of which F. P. could have commenced an action for the same relief in substance that the plaintiff demands in her complaint.

3*d.* Whatever right the plaintiff has to maintain this action came to her by inheritance from her father. She took such right of action in the precise condition that it was when her father died. The statute having run as to him when he died, it has run as to her.

4*th.* The rule as to disabilities is that when the statute begins to run, it is not arrested by any subsequent disability, unless expressly as provided in the statute, and a person who claims the benefit of the general exceptions in the statute can only avail himself of such disabilities as existed when the right of action first accrued, so that when the statute has begun to run against the ancestor it is not suspended by any statutory disability in the heir at the time of the descent cast. Therefore, the time that elapsed from the date of F. P.'s death to the date when this action was commenced should be added to the period that the statute had run before his death, making more than twenty years. Hence, even if this were an action for the recovery of real property, it would fall within the statute.

5*th.* No such disability as long continued undue influence is provided for by the statute. Until the undue influence ripens into a cause of action, the statute does not begin to run, but when it has so ripened and the right of action is complete, the continued exercise of the same influence over the person defrauded, in order to prevent him from suing, does not affect the operation of the statute.

*Herkimer Special Term, September,* 1882.

THE plaintiff, in her complaint in this action, alleges that one Andrew Piper, of Herkimer county, died in 1842, and left by his will all of his property to his two sons, James and Frederick, subject to certain charges, and also subject to the following limitation, viz. : " That in case of the death of my son Frederick Piper, without lawful issue, the part and portion of my estate, real and personal, hereinbefore devised and bequeated to him shall belong to, and is hereby devised over to, my said son James Piper and his heirs, subject to all the charges and conditions hereinbefore contained ; " that James and Frederick took possession of said property, consisting mainly of a farm of 144 acres in the town of Frankfort in said county, and continued to own the same until the 26th of March,

1859, when Frederick conveyed his interest in the farm to the defendant, who had in the meantime married a daughter .of James, for a consideration, as expressed in the deed, of $500; that Frederick was a man of weak and feeble mind, incapable of managing the property in question or of transacting or understanding ordinary business matters; that at the date of said deed, and for a number of years prior thereto, the defendant had been his general agent, had managed his part of the farm, transacted all of his business, lived in the same house with him, and had acquired complete control over him; that said deed was procured from Frederick by the defendant for an inadequate consideration, through undue influence and fraud; that the pretended consideration therefor was an agreement by the defendant to pay, on the death of Frederick, to the woman whom he should marry, the sum of $500, and to support him, wholly or in part, during his life; that it was a part of the defendant's plan to cause Frederick, who was then unmarried, to marry, and with this object in view, he induced one Catherine Hagel to go to Frankfort and see Frederick, representing to her that he had a fine property worth $8,000, so left that if he married and had an heir, the heir would have the property; that upon this visit of Catherine, the defendant introduced her to Frederick, whose hair, which had been gray, was dyed black for the occasion, and by representing that Frederick was betweeen forty-five and fifty years old and owned property as aforesaid, induced her to marry him, and they were accordingly married on the 11th of April, 1859, the first day they ever met; that they lived together for more than a year, and on the 6th of February, 1860, the plaintiff, their child, was born; that during the latter part of 1859 the plaintiff's mother, having discovered that the defendant claimed to own the farm, which had in the meantime been formally partitioned between James and the defendant by mutual quitclaim deeds, went with Frederick to Utica, where they employed the law firm of Conkling & Throop to bring an action in the name of Frederick against the defendant and

James Piper to set aside said conveyance as fraudulent and obtained by undue influence; that early in January, 1860, said suit was commenced, and shortly thereafter the defendant, through undue influence and fraud, induced and compelled Frederick to discontinue said suit, without the knowledge or consent of his wife; that Frederick and his wife were provided for by the defendant, and lived together in an old house on the farm, fitted up for the purpose, until June, 1860, when he went to the house of the defendant to live, and after that no provision was made for the plaintiff or her mother, except by the pocrmaster; that on the 11th of Octobor, 1860, a written instrument was executed by Frederick, his wife, the defendant and Harris Lewis and John W. Davidson, which, after reciting the conveyance by Frederick to the defendant, said marriage, the birth of the plaintiff, the dissatisfaction of her mother with the present situation and with said conveyance, and the desire to separate from her husband, the obligation of the defendant to support plaintiff and her mother during Frederick's life, the mutual desire of all to make an arrangement and settlement of all their differences and difficulties, provided that defendant should pay $900 for the benefit of plaintiff and her mother in full discharge of all his liabilities to Frederick and his wife and child; that a bond from defendant to Frederick, dated March 21, 1859, should be canceled and all liability thereupon discharged; that Lewis and Davidson should take the $900, pay $400 thereof to the wife for her sole use, and invest the remainder in bond and mortgage, and pay the interest to her until the child should become twenty-one, when the principal was to be paid to the child, the plaintiff, but if mother or child should die before that date, the whole was at once to belong to the survivor; the mother was to support herself and child and hold Frederick and defendant harmless from any claim for the support of either; the defendant was released from all liability to the mother, and Davidson and Lewis joined simply as trustees for her and her child, the instrument was under seal, was signed

by a subscribing witness, and was declared to be binding upon the administrators and executors of all the parties thereto.

. The complaint further alleges that said writing was executed by Frederick under said influence and compulsion of defendant in ignorance of its contents and effect; that the wife executed it because of her poverty and the desertion of her husband under defendant's influence; that no one was authorized to execute on behalf of plaintiff, who in her complaint repudiates the same and claims that it was a part of the defendant's fraudulent scheme and device to cheat and defraud her father and herself out of said property, but consents that whatever had been received for her use might be deducted from the profits realized by defendant from the property; that at the time of the conveyance by Frederick the farm was worth $4,000 or $5,000, and is now worth $12,000; that Frederick died on the 9th of March, 1876, leaving the plaintiff his only child and heir.

The relief demanded, among other things, is that said deed from Frederick to defendant be declared fraudulent and void; that plaintiff be adjudged entitled to the possession and ownership of her father's part of said premises, and that the defendant account for the rents and profits, and pay them, less his lawful charges, to the plaintiff.

The original answer admitted certain facts, but denied all allegations of fraud, undue influence, mental incapacity and the like. After issue was thus joined an order was made at special term directing that two questions of fact arising under the pleadings be tried before a jury, and in answer to those questions the jury found that the defendant obtained said deed from Frederick by fraud and undue influence, and that the defendant also procured the execution of the agreement for a settlement, dated October 11, 1860, by fraud and undue influence. After this verdict was rendered an order was granted at special term allowing the defendant to amend his answer, and he then pleaded, in addition to his former defense, the statute of limitations. Subsequently a motion for a new

trial was made and denied, and on the 8th of September, 1862, the cause was submitted for final decision upon the pleadings, verdict and the evidence taken upon the trial before the jury.

*A. M. Beardsley*, for plaintiff.

*Amos H. Prescott* and *George W. Smith*, for defendant.

VANN, *J.* — The findings of the jury are adopted as the findings of the court. The only question that now remains to be considered is whether the statute of limitations is a defense to the action.

It is alleged in the amended answer that the cause of action set forth in the complaint did not accrue within the period of six years before the commencement of the action; and, also, by a separate answer, that said cause of action did not accrue within the period of ten years before the action was commenced.

The deed from Frederick Piper to the defendant was dated March 26, 1859, and was recorded September 20, 1859. The plaintiff was born on the 6th of February, 1860. The instrument providing for an arrangement and settlement of all differences and difficulties bears the date of October 11, 1860. Frederick died on the 9th of March, 1876. The plaintiff became twenty-one years of age on the 6th of February, 1881. This action was commenced on the 19th of February, 1881.

There was a period of sixteen years, therefore, during any part of which Frederick could have commenced an action for the same relief in substance that the plaintiff demands in her complaint.

That relief is purely equitable in its nature, for a court of equity alone has power to entertain actions to set aside or annul conveyances and agreements on the ground of fraud. Whatever right the plaintiff has to maintain this action came to her by inheritance from her father. She took such right of action in the precise condition that it was in when her father died. His death did not create the cause of action, nor

add to it, nor affect it, except that the right to commence suit upon it descended from him to her. Therefore, if the statute had run as to him, when he died, it has run as to her; or, in other words, she inherited a cause of action that had outlawed. The effect of success in an action brought by the father in his lifetime would have been to reinvest him with the title to the farm, as of the date when he parted with it. The effect of success by the plaintiff in this action would be to reinvest her father with the same title as of the same date, and hence enable her to inherit the land from him, as his sole heir at law. It is upon this ground that the right of action descended to her, instead of going to her father's administrator. But she has no other or better right of action, so far at least as the theory and compass of her complaint is concerned, than her father would have had on the day that he died. The statute of limitations then in force was a part of the Code of Procedure, and the section applicable to such an action as this, had it been commenced by her father, was obviously either number ninety-one or number ninety-six.

Section 91, after fixing the period of limitation for many classes of actions at six years, enacts the same limitation for " an action for relief on the ground of fraud, in cases which heretofore were solely cognizable by the court of chancery" and adds these words : " The cause of action in such cases not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. This section clearly embraces and specifically defines the cause of action that Frederick Piper had (*Fort* agt. *Farrington*, 41 *N. Y.*, 164; *Mayer* agt. *Griswold*, 3 *Sand. Supr. Ct.*, 464). But if it does not, then it must be covered by section 97, which provides that " an action for relief, not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued." According to the Code of Procedure there was no action that did not have its period of limitation (*Sec.* 74, *Code of Procedure*). Section 97 prescribed the longest period of all, except in the case of actions

for the recovery of real property and upon judgments and sealed instruments. But whether the period that applied to the cause of action that accrued to Frederick in his lifetime was six or ten years, is not important, as sixteen years elapsed after he had the right to sue, before he died.

Moreover, the rule as to disabilities is that when the statute begins to run it is not arrested by any subsequent disability, unless expressly as provided in the statute, and a person who claims the benefit of the general exceptions in the statute can only avail himself of such disabilities as existed when the right of action first accrued (*Code of Civil Pro.*, sec. 106; *Wood on Limitation of Actions*, 10), so that when the statute has begun to run against the ancestor it is not suspended by any statutory disability in the heir at the time of the descent cast (*Rogers* agt. *Brown*, 61 *Mo.*, 187; *Swearingen* agt. *Robertson*, 39 *Wis.*, 462). Therefore the time that elapsed from the date of Frederick Piper's death to the date when this action was commenced should be added to the period that the statute had run before his death, making more than twenty years. Hence, even if this were an action for the recovery of real property it would fall within the statute (*Code*, sec. 78; *Miner* agt. *Beckman*, 50 *N. Y.*, 337).

The learned counsel for the plaintiff, in the exhaustive brief that he submitted, seeks to avoid the effect of the statute by contending: 1st. That Frederick never actually discovered the facts constituting the fraud practiced upon him by the defendant; and, 2d. That as he continued in the same situation and under the same undue influence as long as he lived, he was under a disability that is presumed to have prevented him from making discovery of the fraud.

As to the first position the evidence does not sustain it. The facts shown by the plaintiff compel the inference that Frederick in fact knew of the fraud as early as 1860.

The second position, even assuming that the facts upon which it is based existed, does not help the plaintiff. While, as already appears, the Code of Procedure fixed a period of

limitation for every action, it also provided that if the person entitled to sue at the time the cause of action accrued was within the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than his natural life, the time of such disability should not be a part of the time limited for the commencement of the action (*Sec.* 101).

Provision is also made for the case of aliens, and where judgment has been reversed on appeal, and where the commencement of an action has been stayed by injunction, appropriate to the several subjects (*Secs.* 103, 104 *and* 105).

But no such disability as long continued undue influence was provided for by the statute, yet as certain disabilities are specified it is presumed that no others can exist, or at least that the legislature intended to prevent all others from delaying the statute. Until the undue influence ripens into a cause of action the statute does not begin to run; but when it has so ripened and the right of action is complete, the continued exercise of the same influence over the person defrauded, in order to prevent him from suing, does not affect the operation of the statute. Whether the legislature presumed that such influence could not be prolonged to a period of six years, or concluded that it was better to secure the public at large from prosecution after a certain period than to permit infrequent cases of fraud to be redressed after a longer period, it placed a limit to the time within which an action founded on undue influence could be commenced, and did not include the continuance of that influence in its list of disabilities. Some states make unsoundness of mind a disability (*General Statutes of Kentucky for* 1881, *chap.* 71, *art.* 4, *sec.* 2; *Revised Code of Mississippi*, 1880, *chap.* 76, *sec.* 2677). But the statute of this state, by including insane persons only, excluded even idiots and imbeciles who would seem to require as much protection as if insane (*Sanford* agt. *Sanford*, 62 *N. Y.*, 553).

Courts have no power to make exceptions in order to protect a party in a case of great hardship from the consequences

of the statute, unless they come clearly within the saving clauses therein contained, and the exercise of any such authority by a court is a usurpation of legislative powers. They cannot add any exceptions to those mentioned in the statute, however much the ends of justice in a particular case may demand it (*Banning on Limitations*, 85 ; *Wood on Limitations*, 496).

The counsel for the plaintiff, in his able argument, also contends that the representations of the defendant to Mrs. Piper that the farm belonged to Frederick, and was so left that it would go to his child if he had one, induced her to marry Frederick, and thus gave to the plaintiff, the fruit of that marriage, a cause of action in her own right. To such an action the plea of the statute would be no answer, as the plaintiff was under the disability of infancy until a few days before this suit was begun.

There are many cases in the English reports relating to feigned conveyances and false representations made by third persons in order to bring about marriages. The principle upon which the courts proceed in such cases is, that as the wife must be presumed to agree to the marriage as well in expectation of the present support which she and her children will receive from her husband, as of the provision which he may have made for them after his death ; that a person who has been at all concerned in raising such expectation shall not be suffered in anywise to disappoint it (*Atherly on Marriage Settlements*, 485).

Upon this principle it was held that where a man, in order to help his brother's marriage, gave him a security for £1,730, which he pretended he owed to him, but took a bond of indemnity from his brother ; and the security was shown to the parents of the intended wife and was an inducement to the marriage, the giver of the feigned security was bound to pay it (*Montefiore* agt. *Montefiore, Wm. Blackstone*, 363).

So where a person, in order to promote the marriage of one who was in debt agreed to take the debt upon himself and

gave the creditor a security for it, but privately took a counter security from the original debtor, it was held that the person taking the debt upon himself was bound to pay it, and the counter security was set aside (*Redman* agt. *Redman*, 1 *Vern.*, 348).

And where the creditor of a man about to marry represented to the wife's friends that he had no demand upon the intended husband, it was held by lord THURLOW, on a bill filed by the husband and his trustees, that the creditor should be restrained from recovering any part of such debt (*Neville* agt. *Wilkinson*, 1 *Brown's Ch. Cases*, 543).

Also where a son who owed his mother, being about to marry, represented himself as free from debt, and she, on being spoken to about it by the father of the intended wife, made no disclosure of the debt, it was held in an action brought in the court of exchequer by the mother against her son to recover such debt, that the son was no longer liable (*Scott* agt. *Scott*, 1 *Cox*, 378).

These and other cases are cited on behalf of the plaintiff to relieve her from the effects of the statute, but this action was brought for relief from the fraud practiced by the defendant upon her father, not upon her mother. The deed which she wishes to have set aside, was given before her father ever saw or heard of her mother. The representations made to her mother were wholly independent of the giving of the deed. Hence any cause of action founded on those representations are likewise independent of the giving of the deed. If the deed had been given for a full consideration, unaffected by any question of fraud, undue influence or mental incapacity, still the liability of the defendant for any false representations that he made to the mother to induce her marriage would be the same. Such an action would belong to the plaintiff in her own right and not by inheritance from her father. Its foundations would be the representations made to her mother, not the original fraud practiced on her father. The action set forth in the complaint is not such an action.

It was neither brought nor tried upon that theory. In the pleadings and on the trial the marriage was treated by both parties only as evidence bearing upon the motives of the defendant and his fraud in procuring the deed. While the marriage formed no part of the right of action that the plaintiff inherited from her father, it is an essential part of any cause of action that she can maintain to compel the defendant to make good his representations to her mother, or to restrain him from asserting title to the farm, which she would have inherited had his representations been true. I am, therefore, compelled, and I admit my reluctance, to hold that the statute of limitations is a defense to this action.

The complaint of the plaintiff should be dismissed, but without costs and without affecting the terms upon which the right to amend his answer was granted to the defendant.

Findings may be prepared accordingly and served, with a copy of this opinion, upon the attorneys for the plaintiff, who are at liberty to propose amendments, before they are submitted for my signature.