AGNES L. PRICE, RESPONDENT, v. SAMUEL L. MULFORD, APPELLANT, IMPLEADED WITH PETER S. WANDELL.

*Trust funds — the statute of limitations does not begin to run until notice of the repudiation of the trust is given — the members of a firm are liable for trust funds used for its purposes by one partner.*

January 1, 1863, the firm of Mulford & Wandell held a certificate of indebtedness, signed by one Barry, for $1,350. At that time the firm was indebted to Wandell in the sum of $1,400. Wandell, who was then county treasurer, took the certificate of indebtedness, had himself charged with it on the books of the firm in satisfaction of his debt, and made an entry on the books of the county treasurer to the effect that he had invested $1,350 of a trust fund, held under an order of the court, in the said certificate.

In 1868 Wandell transferred the said certificate to his successor as a part of the said trust fund. In June, 1883 the beneficiary of the trust fund, to whom the certificate had been transferred under an order of the court, first became aware of what had been done, and brought this action against the two members of the firm to recover the sum so abstracted.

*Held,* that the right of action was not barred by the statute of limitations.

That the plaintiff was entitled to recover. (PRATT, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury and from an order denying a motion for a new

trial, made upon the minutes of the justice before whom the action was tried.

It appeared upon the trial that the defendants Samuel L. Mulford and Peter S. Wandell were copartners, doing business at Stapleton, Richmond county, under the firm name of Mulford & Wandell, from 1862 to 1869. They were engaged in the sale of lumber and coal. The defendant Peter S. Wandell was, during a considerable part of the period of their copartnership, the county treasurer of that county. Dennis Keeley, payee in the certificate hereinafter referred to, was a customer and debtor of the firm. He received the certificate from the maker thereof for work done by him and being then indebted to the defendants' firm, he, on or about the 1st day of December, 1865, indorsed and delivered this certificate to the firm as payment of a portion of such indebtedness and received credit therefor upon the books of the firm. While this firm held it they received interest upon the amount named therein for two years. In 1863 Wandell took this certificate, charged it to himself upon the books of the firm, in satisfaction of a debt due from it to him, and invested a trust fund held by him as county treasurer in the purchase of it. This certificate was indorsed by the defendants in their firm name, per P. S. Wandell, then county treasurer, to E. P. Barton, county treasurer, the successor in office of Wandell, as of the date of January 1, 1868, and the sum of $1,397.25 (equivalent to the face of the certificate and accrued interest) was charged by Wandell to the " court funds " in the suit of Conover v. Van Dyke, and is so entered upon the " ledger " of the " court funds " in that county, and it was so entered upon said ledger prior to the time when the " funds " and " ledger " were turned over to Mr. Barton, the successor in office of Wandell.

By an order of this court, dated the 18th day of June, 1883, the county treasurer of Richmond county, upon application made, was directed to pay the surplus moneys in Conover v. Van Dyke to the plaintiff and her assignors as the heirs-at-law of one Nicholas Van Dyke Price, deceased, and with such surplus moneys was this certificate.

This action was then began by the plaintiff to recover from the defendants the sum of $1,397.25, being the amount abstracted from the court funds as aforesaid.

*William M. Mullen,* for the appellant.

*Edward B. Merrill* and *Henry D. Hotchkiss,* for the respondent.

BARNARD, P. J.:

Wandell, one of the firm of Mulford & Wandell, received the money as county treasurer. This was a trust fund, as to which there is no statute of limitations unless notice of hostility to the trust is given. Somehow the beneficiary must be made aware that the trustee repudiates the trust and claims to hold in opposition to it. The case shows no such repudiation. Wandell is liable. Can he, by transfer to his firm, change the relation of the parties? Surely not. The transfer was made with the full knowledge that the fund acquired by the partnership was a private trust fund in the county treasurer's hands. The partnership became, in law, trustees, and the beneficiaries neither knew of the transfer, or that their money was being held in opposition to them. A county treasurer could change the title to all the trust funds to himself indirectly if this rule prevailed. The action is not barred, and the judgment should be affirmed, with costs.

DYKMAN, J., concurred.

PRATT, J. (dissenting):

Assuming this action to be one in which the plaintiff could recover, it appears to be a case in which there were concurrent remedies. The plaintiff had a clear remedy at law to recover from the defendant for money had and received, if the amount was known and certain. But it is equally clear that if the amount received by defendant was either not known or was uncertain, that a court of equity could compel him to account and make discovery. The case is not one which was solely cognizable by the Court of Chancery, and hence would not have fallen within subdivision 6, section 91 of the old Code. (*Foot* v. *Farrington,* 41 N. Y., 164.) But in the new Code, the word "solely" was stricken out; and in the case of *Carr* v. *Thompson* (87 N. Y., 160), it was held by the Court of Appeals that this provision of the statute is not limited solely to actions to procure a judgment other than for a sum of money, but that it would apply to an action to procure a judgment for a sum of money, provided such action was one in which the

Court of Chancery had jurisdiction, although it might not have had sole jurisdiction, and the plaintiff might have had a complete remedy at law. The effect of this decision is that the question whether subdivision 5 of section 382 is applicable does not depend upon the character of the relief which the plaintiff seeks, but it is to be determined by the cause of action as it appears from the facts set forth in the complaint. If the cause of action there set forth is one in which the plaintiff might have sought his remedy in a court of equity, then the time of the accruing of such cause of action is postponed until the discovery of the fraud.

Neither can this question depend on the fact that the plaintiff is informed as to the exact amount of her loss, as in this case. To hold that because when plaintiff discovered the fraud she also discovered· the exact amount of her loss, and hence had no need of the aid of a court of equity, and for this reason her cause of action is not within the statute, but would have fallen within the statute if she had been ignorant of the amount of her loss, and had required an account of discovery from defendant to ascertain it, would be too narrow a construction of the statute to receive judicial sanction. The true test is this — considering the allegations of the complaint independent of the amount for which judgment is asked — is the case one in which the Court of Chancery had jurisdiction to grant relief? If it is, then it falls within the statute, and the fact that the case may be one in which the plaintiff could also have obtained relief in a court of law is of no consequence. It is a case in which, under the practice before the Code, there would have been concurrent remedies, and falls within the principle decided in *Carr* v. *Thompson*. If, therefore, the plaintiff's right to recover depended solely on the question of the statute of limitations, I should be prepared to hold that her cause of action was within subdivision 5, section 382 of the Code, and did not accrue until the discovery of the fraud.

But a more serious question remains. It appears from the evidence that on January 1, 1863, the firm of Mulford & Wandell held a certificate of indebtedness signed by one John Barry, pastor of the Catholic church of Richmond, for $1,350. This certificate the firm had held for about three years. On this date the defendant Peter S. Wandell was treasurer of Richmond county, or was

about retiring from that office. As such county treasurer he held the sum of about $1,900, which was the share of Nicholas Van Dyke in the proceeds of sale of certain lands which had been sold pursuant to a decree of the court in an action for partition. The firm were indebted to Wandell in the sum of about $1,400 for rent and other matters which was credited to him on the books of the firm. Wandell took the certificate, charged himself with the amount, $1,350, and then made an entry upon the county treasurer's books to the effect that he had invested $1,350 of the trust fund belonging to Price in the certificate. On the appointment of his successor he indorsed the certificate with the firm name, and delivered it to his successor as and for so much of the trust fund aforesaid. At what precise time he made the entries on the books does not appear. The certificate was transferred to his successor in January, 1868. It does appear, however, that the firm never directly received any of the trust fund. The only fact proven from which it could be inferred that the firm had received any of this money was the indorsement of the certificate with the firm name, and its delivery, so indorsed, to the successor of Wandell. Unexplained, this might justify the inference that the money which the books show was invested in this certificate had been paid to the firm when they parted with the certificate. I think, however, the facts as they appear in evidence, and about which there is substantially no dispute, negative any such inference. In order for the plaintiff to recover against the defendant Mulford it must appear that the firm received the trust fund. No act of Wandell can be made the basis of liability on the part of Mulford, short of putting the trust fund into the business. If Mulford is liable, it must be because the firm had the money, and it appears clearly, I think, that Wandell never deposited any of the money with the firm. There is no evidence that he did, and Mulford distinctly states that the firm never received it.

Neither can it be said that the firm had the benefit of the money. It does not appear when Wandell appropriated the fund. It cannot be assumed that he did it when he delivered the certificate to his successor, because he had made the entries in the book before that, and even if he did appropriate the money at that time, there is no evidence that he paid it over to the firm.

The transaction between Wandell and the firm was simply this: The firm owed Wandell and held the certificate; Wandell took the certificate and canceled the firm indebtedness to himself. This was a *bona fide* transaction; there was ample consideration to the firm to transfer the certificate, and ample consideration to Wandell to cancel the debt. There is no proof that the certificate was not good at this date; the interest had been paid on it, and Barton testifies that the interest was paid on it while he held it.. Beyond this, Mulford or the firm cannot be connected with the trust money.

If Wandell had embezzled the money before he took the certificate, Mulford is not responsible because the certificate was afterward transferred to the trust account. If the money was embezzled after Wandell took the certificate, then clearly Mulford had no connection with the transaction. In neither case can it be said that the firm had the money or the benefit of the money.

That the effect of these transactions was to cheat the owner of the fund and to pay the firm debt to Wandell, is of no consequence; that is but an incident to the transaction, the trust fund might have been embezzled if Wandell had not taken the certificate, and the transaction between the firm and Wandell might have taken place and the trust fund remained intact; there is no necessary connection between the two events. It was a perfectly legitimate matter for Wandell to take the certificate in payment of his debt, and Mulford is not responsible for Wandell's subsequent acts in relation to the certificate, unless he was a party to the transaction. He appears to have been entirely ignorant of Wandell's conduct, and in my judgment is not responsible for the loss of the trust fund.

The judgment for this reason must be reversed and a new trial granted, with costs to abide the event.

Judgment and order denying new trial affirmed, with costs.