## ELY vs. TESCH.

Where the testimony of a witness for the plaintiff and that of the defendant were in direct conflict, and the former was supported by another witness, it was error for the court to instruct the jury that if they believed that the first two witnesses were entitled to equal credit, the testimony of the third "created a preponderance of testimony in favor of the plaintiff, unless there was some fact or evidence tending to corroborate the defendant."

A judgment for the plaintiff should be reversed for such error, although the court also charged the jury generally that they were the exclusive judges of the credibility of witnesses.

APPEAL from the Circuit Court for *Milwaukee* County.

Action brought by *Linus Ely* upon a note given by *Tesch* to William C. Ely and indorsed to the plaintiff, and an account for goods sold and delivered to *Tesch* by said William C. Ely, which account had been assigned to the plaintiff. *Tesch* answered, setting up an agreement in writing by which William C. Ely, with the other creditors of said defendant, agreed to accept a conveyance of certain lands in full satisfaction of their debts. A copy of the agreement was annexed to and made a part of the answer. On the trial, the court decided that the defendant had the affirmative of the issue. The defendant

then read in evidence an agreement signed by William C. Ely and his other creditors, releasing him from all their claims on condition that he should cause to be made a conveyance to Jerome R. Brigham, his heirs, &c., of certain lands, to be held in trust by said Brigham for the use and benefit of said creditors. He also read in evidence a deed of said lands duly executed to Brigham, and a declaration of trust duly executed by the latter and recorded. The plaintiff read in evidence a deposition of William C. Ely, who testified in substance that *Tesch* applied to him, at his place of business in the state of New York, to sign an agreement similar to that produced by him in evidence, but which he represented as providing for a conveyance of the lands to Thomas A. Green as trustee, to which deponent agreed; that *Tesch* read the agreement to him while one Salsbury, deponent's book-keeper, looked over a copy of said agreement previously forwarded to the deponent by *Tesch*; that said copy and the original as read by *Tesch* to deponent contained the name of Thomas A. Green as trustee, and deponent signed it with that understanding; and that there was no agreement or understanding of any kind between him and *Tesch* in reference to substituting the name of any other person as trustee in place of said Green. The plaintiff then called said Salsbury as a witness, who testified to the same facts. The defendant, as a witness in his own behalf, then testified as follows: "In the places where the name 'Jerome R. Brigham' appears in this original agreement, there was first written 'Thomas A. Green' with lead pencil. The attention of William C. Ely was called to that fact. I stated to him that the paper had been drawn up in New York city by my largest creditors, and they had suggested the name of Thomas A. Green, and not knowing whether he would accept, his name was written in pencil, and it was understood that if Green refused to act he was to nominate some other person, and his name was to be rubbed out, and the name of such person inserted. This I explained to Mr. Ely before he signed the pa-

per, and he consented to it.    When I came home, I took the
paper to Mr. Green; he refused to act as trustee, and I told
him he was to nominate a trustee.    He nominated Jerome R.
Brigham, whose name was thereupon inserted."

There was some evidence as to how much time elapsed after
William C. Ely was notified of the fact that the contemplated
conveyance was made to Brigham as trustee, before he object-
ed; but it is not necessary to state that evidence here, or the
rulings of the court upon it.

The court instructed the jury " that they were the exclusive
judges in regard to the credibility of witnesses; that the great
question at issue between the parties was, whether the altera-
tion in the agreement signed by William C. Ely was made
with his consent; that if it was understood at the time the
same was executed by Ely, that in case Green would not act
as trustee he should select some other person for that purpose,
and Green did refuse and select Brigham, then the jury must
find for the defendant; but if there was no such understand-
ing, and the change of name was made without Ely's knowl-
edge or consent, and was not subsequently ratified by him, the
plaintiff was entitled to a verdict." At the request of the
plaintiff the court further instructed the jury as follows :    " 1.
If you believe the defendant and William C. Ely are equal-
ly entitled to credit, then the testimony of Salsbury creates a
preponderance of testimony in favor of the plaintiff, unless
there is some fact or evidence tending to corroborate the de-
fendant.    2. If you find from the evidence that the agree-
ment, when signed, contained, as read and written, the name of
Thomas A. Green, and this was afterward changed for that of
Brigham without the knowledge or consent of William C. Ely,
then, notwithstanding the fact that said Ely afterwards wrote
to Green inquiring what kind of a man Brigham was, and
merely remained silent thereafter, doing no act and saying no
word, the plaintiff is entitled to a verdict." The court refused
to give the jury the following instructions asked by the de-

fendant: " 1. The agreement introduced in evidence, between *John H. Tesch* and his creditors, including William C. Ely, is proof that said agreement was so signed or executed by William C. Ely, unless he shall deny the signing or execution by his oath or affidavit. 2. If the jury find from the evidence that William C. Ely executed the said agreement, and that in pursuance of that agreement the defendant caused to be executed a conveyance of the land mentioned in the agreement to Jerome R. Brigham, the person named in said agreement, then the plaintiff is not entitled to recover in this action." Exceptions were duly taken by the defendant to the giving of the instructions asked for by the plaintiff, and the refusal of those asked for by himself.

Verdict for the plaintiff; motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*Finches, Lynde & Miller*, for appellant, to the point that the first instruction given at the request of the plaintiff was erroneous, cited *Schneer v. Lemp*, 17 Mo., 142 ; *Clement v. McConnel*, 14 Ill., 154; *Noland v. The State*, 19 Ohio, 131; *Moffit v. Cressler*, 8 Clarke (Iowa), 122; *Dunlap v. Hearn*, 37 Miss., 471; *Letton v. Young*, 2 Met. (Ky.), 558 ; *Firemen's Ins. Co. v. Walden*, 12 Johns., 518; *Morton v. Fairbanks*, 11 Pick., 368 ; *Haskins v. Haskins*, 9 Gray, 391; *Aylwin v. Ulmer*, 12 Mass., 24; *Ware v. Hill*, 1 B. Mon., 290; *Dowdell v. Neal*, 10 Ga., 148; *Allen v. Kopman*, 2 Dana, 221; *McGregor v. Armill*, 2 Clarke (Iowa), 30.

*Mat. H. Carpenter*, for respondent :

There was no attempt to impeach Salsbury ; he was entirely disinterested ; and the court says to the jury, " you are the exclusive judges of the credibility of witnesses ; but if the testimony of A is diametrically opposite to that of B, and they are entitled *to equal credit*, then a third disinterested unimpeached witness, swearing with A and against B, creates a preponderance of testimony in favor of the story of A, unless there

is some circumstance or evidence tending to corroborate B."
This left the whole question to the jury fairly and properly.

*By the Court*, PAINE, J.   We can see no error that occurred
on the trial, unless it may be found in the instruction given to
the jury, that "if they believed the defendant and William C.
Ely were entitled to equal credit, then the testimony of Sals-
bury created a preponderance of testimony in favor of the
plaintiff, unless there was some fact or evidence tending to
corroborate the defendant."

It is obvious that this would be erroneous except for the
qualification at its close.   For it is not proper for a court to
say to a jury that when one witness testifies on one side and
another on the opposite side, and the two are equally credible,
the testimony of a third necessarily creates a preponderance
on either side.   The witness might exhibit such incapacity or
prejudice, or want of memory, that the jury might regard him
as wholly unworthy of belief.   Upon this point the jury are
the judges, and they should be left free to exercise their judg-
ment without being trammelled by any instruction from the
court that they might suppose binding upon them.   What ef-
fect then should the qualification at the close of the instruction
have upon it?   The judge told the jury that the testimony of
Salsbury created a preponderance " unless there was some fact
or evidence tending to corroborate the defendant."   Now evi-
dence or facts tending to corroborate the testimony of a wit-
ness, would be only such as went affirmatively to give support
to his statements.   That which went merely to lessen the cred-
ibility of a witness who had contradicted him, could not prop-
erly be said to corroborate his own evidence.   His testimony
would still be left without any additional strength.   This in-
struction, therefore, would seem to require the jury, if they
believed *Tesch* and William Ely entitled to equal credit, to find
for the plaintiff because he had an additional witness, unless
the defendant could point to some evidence tending to give

affirmative support to his statements, so as to counterbalance the supposed effect of Salsbury. And this would exclude all the elements in the testimony of such third witness itself which might go to show him unworthy of credit.

And the very design of the plaintiff in asking such an instruction as this, must have been to obtain from the court something that would impress upon the jury that it was their duty to follow the testimony of two witnesses rather than that of one. The main object was to establish the superiority of mere numbers. And although an attempt was made to qualify the proposition, yet we think, as before shown, that the qualification was not sufficiently broad to prevent the instruction from leaving upon the minds of the jury an undue impression as to the importance of the fact that there were two witnesses against one.

It is true that the court did, in the course of its charge, tell the jury " they were the exclusive judges of the credibility of witnesses." But a special instruction upon a particular point, applied by its terms to specific facts in the case, would naturally strike the attention of the jury more forcibly, and be allowed more weight, than a mere general statement. And where there is error in such special instruction, the judgment should be reversed, although there may have been something in the general charge tending to correct it, unless the appellate court can see clearly that the result could not properly have been different. In this case the question in issue was one depending so entirely upon the credibility of the witnesses and the inherent probability or improbability of their respective statements, that it should be determined by a jury under proper instructions.

The cases cited by the appellant show how careful courts have been to avoid trenching upon the province of the jury to determine questions of fact.

The judgment must be reversed, and a new trial ordered.