SPENSLEY, Administratrix, etc. vs. THE LANCASHIRE INSURANCE COMPANY.

*February 6 — March 3, 1885.*

*(1) Appeal to S. C.: Amendment of bill of exceptions. (2) Expert testimony: Weight, as affected by number of witnesses: Instructions to jury.*

1. A motion to remit the record and order the trial judge to incorporate the evidence into the bill of exceptions is denied, the only errors complained of being in the charge to the jury.

2. The question being as to the presence or absence of lightning as an agency in the destruction of plaintiff's house, and the testimony of a number of experts having been taken, an instruction that " although the preponderance of the evidence is not always determined by the number of witnesses, still, in a case where a question is to be determined by the testimony of men of great scientific attainments, other things being equal, the greater number would carry greater weight; that is, the testimony of eight or nine such witnesses would be entitled to greater weight than that of two. . . . But in this case it is your province to give such weight to the testimony of the experts, when viewed in connection with all the other evidence in the case, as you think and believe it should receive,"— is *held* not to have been erroneous. *Ely v. Tesch*, 17 Wis. 202, and *Bierbach v. Goodyear Rubber Co.* 54 id. 208, distinguished.

ERROR to the Circuit Court for *Rock* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The plaintiff's intestate was living and had a dwelling-house in Iowa county, May 28, 1878. On that day it was totally destroyed in a tornado. At the time of the destruc-

tion the house and personal property therein were insured against fire or lightning by the defendant. Soon after, this action was commenced upon the policy. On the first trial, which was in Dane county, the plaintiff was nonsuited. The judgment entered thereon was reversed by this court, and the cause was remanded for a new trial. 54 Wis. 433. The venue was then changed to Rock county, and the case retried before Judge BENNETT and a jury. Seventeen witnesses were sworn and examined on the part of the plaintiff, and their testimony tended to prove that the motive power of the storm or tornado was electricity or lightning, and two of them, John H. Tice and Elisha Gray, as experts, gave testimony tending to prove that the storm was of electric origin, and the destruction of the house was due to the effects of lightning or electricity. On the part of the defense, T. C. Chamberlin, W. W. Daniells, John P. Finly, F. A. Smith, C. H. Haskins, C. S. Smith, J. E. Davies, F. E. Nipher, and James C. Watson gave testimony, as experts, tending to prove that the motive power of tornadoes is wind, and that the cause of the destruction of the house was due to the effects of wind, and not lightning or electricity. The learned trial judge, among other things, instructed the jury:

"The same rules of law which govern the interpretation and construction of other written contracts and agreements on other subjects, are equally applicable to contracts of insurance, and must govern in their construction and interpretation. And the phrase above quoted from the policy ['loss or damage caused by lightning'], and the words it contains, are to be construed according to their sense and meaning, as collected from the words themselves and the entire phrase; and in arriving at their sense and meaning the words themselves are to be understood in their plain, ordinary, and popular sense. In other words, the best construction is that which is made by viewing the subject of the contract as the

mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves to the contract viewed it. A result thus obtained is exactly what is obtained from the ordinary rule of intention; and the word 'lightning,' in this policy of insurance, must be understood in its plain, ordinary, and popular sense.

"It is conceded by both parties to this litigation that the property insured was destroyed in a tornado. But the plaintiff contends that the active agent and real direct cause of its destruction was lightning; while the defendant contends that the proximate cause of its destruction and loss was a violent wind-storm, commonly called a 'tornado,' and that lightning had nothing to do with it, and that electricity was not the cause of the tornado, and was not an active agent in the ruin and destruction which marked its path through the country. This policy is a general insurance against lightning, and most certainly covers all known effects of electricity coming under the general head of lightning. Webster defines lightning as a 'discharge of atmospheric electricity, accompanied by a vivid flash of light, commonly from one cloud to another, sometimes from a cloud to the earth. The sound produced by the electricity in passing rapidly through the atmosphere constitutes thunder.' He also defines ball lightning as a rare form of lightning, seen as a globe of fire moving from the cloud to the earth; chain lightning is lightning in angular or zig-zag and often forked flashes. And the Imperial Dictionary says that 'lightning is a sudden discharge of electricity from a cloud to the earth, or from the earth to a cloud, or from one cloud to another; that is, from a body positively charged to one negatively charged, producing a vivid flash of light, and usually a loud report called thunder.' Webster defines a tornado as 'a violent gust of wind, or a tempest, distinguished by a whirling, progressive motion, usually accompanied with severe thunder, lightning, and torrents of rain,

and commonly of short duration and small breadth; a hurricane.' And other dictionaries and encyclopedias give substantially the same definition; and they tell us that a hurricane is generally accompanied by thunder and lightning, and rain and hail; and the Imperial Dictionary says that 'they appear to have an electrical origin.' And the Imperial Dictionary defines electricity as 'the name given to the cause of a series of phenomena exhibited by various substances, and also to the phenomena themselves; that we are totally ignorant of the nature of the cause, whether it be a material agent or merely a property of matter. But as some hypothesis is necessary for explaining the phenomena observed, it has been assumed to be a highly subtile, imponderable fluid, identical with lightning, which pervades the pores of all bodies, and is capable of motion from one body to another. Electricity, when accumulated in large quantities, becomes an agent capable of producing the most sudden, violent, and destructive effects, as in thunder-storms; and even in its quiescent state it is extensively concerned in the operations of nature.'

"I have called your attention to the definition of the words 'lightning,' 'electricity,' and 'tornado,' that you may more readily see and arrive at their meaning in their plain, ordinary, and popular sense. [The plaintiff alleges that the loss and destruction of the property covered by this policy of insurance, and the consequent damage arising from such loss and destruction, were caused by lightning; and, this being denied by the defendant, the burden of proof is upon the plaintiff upon this issue, and the plaintiff must show by a preponderance of testimony that such property was destroyed by lightning. I mean, by a preponderance of evidence, that which, after being carefully analyzed and weighed by you, is the most weighty, satisfactory, and convincing. In other words, the plaintiff must produce on the trial evidence more weighty, satisfactory, and convincing, in proof

of the fact that this property was destroyed by lightning, than is produced by the defendant to show that it was not.]

"[In determining the weight and credit to be given to the testimony of the different witnesses in the case, it is proper for you to consider the relationship of any of them to the parties, if the same is proved; their interest, if any, in the event of the suit; their temper, feeling, or bias, if any has been shown; their knowledge, intelligence, and means of information upon the subjects upon which they have been called to give evidence. And where witnesses are otherwise equally credible, and their testimony otherwise equally fair and entitled to credit, greater weight and credit ordinarily are to be given to those whose capacity, intelligence, knowl-.edge, and means of information are greater upon subjects upon which they give evidence.]

"The office or function of a witness being to inform the court and jury respecting the facts of any particular case, their opinions are not in general receivable as evidence. The rule is based on the assumption that the tribunal before whom the testimony is given 'is capable of forming a judgment upon the facts in the case. But there are exceptions to this rule; and on questions of science, skill, trade, and the like, persons conversant with the subject matter, called by foreign jurists 'experts'— an expression now naturalized among us,— are permitted to give their opinions in evidence. The reason of this exception to the general rule is that [the opinion of witnesses possessing peculiar skill is admissible when the subject matter of inquiry is such that inexperi-.enced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of science as to require a course of previous habit or study in order to the attainment of a knowledge of it.]

"It is not always an easy task for the court to determine who are entitled to testify as experts. It is common for

physicians to testify as to their opinions relative to diseases and their proper treatment; surgeons, as to the fracture of bones, and whether they have been properly or improperly set; chemists, in the detection of poisons in persons supposed to be murdered, or in determining whether blood-stains are from the bodies of human beings or the blood of animals. So men skilled in the mechanic arts or trades are frequently called upon to give opinions in courts of justice in their peculiar art or calling. Sometimes persons are admitted to testify as experts where the course of study has been so short, or the experience so limited that the evidence they give is entitled to but very little consideration, and worthy of but very little confidence. While it is the duty of the court in the first instance, when a person is produced as an expert, to pass upon his competency, it is for the jury to say from his evidence whether he has shown such skill in reference to the art or science upon which he gives evidence as to render his opinions of any value. It is under this rule, and its exception above noted, that the professors in schools, colleges, and universities, and some skilled in the science of electricity, have been permitted to give their opinions upon the subject of lightning, electricity, whirlwinds, tornadoes,— their causes, manifestations, and effects; and the main question upon which they differ is whether what is commonly called a tornado or whirlwind is caused primarily by lightning, or is due to different currents of wind of various temperatures and barometric pressures.

"The same rules, in the main, which apply to the credit and weight to be given by the jury to the evidence of ordinary witnesses, are equally applicable to the testimony of experts. If they have shown any bias or prejudice, or a desire to sustain any particular theory, regardless of the wellknown facts of a case as shown by other testimony, or of any theory in opposition to well-established scientific truths, it is proper for you to take such things, and manifestation

of feeling or bias, into the account in weighing their evidence. Whether any such bias, prejudice, or desire has been shown, you are the sole judges. Then, again, their preparatory studies — the years of study, experiment, and practice in any art — are matters to be taken into consideration by you in weighing their testimony; their manner, appearance, and demeanor on the stand, and particularly their conduct under cross-examination, generally considered a great test in detection of falsehood, or whether a person testifying as an expert is a mere pretender, or whether he possesses great learning upon the subject upon which he gives evidence, obtained by years of toil and patient, careful, and thorough study. Then, again, you may take into consideration the fact, if you find such to be the case, that these experts have given evidence upon abstruse, occult scientific subjects, upon which accurate knowledge is only obtained with very great difficulty, and upon which, from the very nature of the case, the testimony has elements of doubt, uncertainty, or inconclusiveness in it, or some portions of it. [But while infirmity and weakness sometimes attaches to the testimony of experts, yet in other cases such evidence is not only highly instructive, but may be such as to be worthy of great weight in settling a scientific fact or question. And when men of great learning in the main agree upon questions of science or physics, their testimony is entitled to greater credit than it would be if they were in conflict.] That [although the preponderance of the evidence is not always determined by the number of witnesses, still, in a case where a question is to be determined by the testimony of men of great scientific attainments, other things being equal, the greater number would carry greater weight; that is, the testimony of eight or nine such witnesses would be entitled to greater weight than that of two.]

"It must be borne in mind that many of these experts, if not all of them, and I think all of them, have not only

given evidence as to matters of opinion as to the cause of the destruction of Spensley's house, but upon questions of fact relating to lightning, electricity, tornadoes, and whirl-winds; and of them, Prof. Chamberlin saw the tornado itself, though, perhaps, not at the time it struck the house in question. But in this case it is your province to give such weight to the testimony of the experts, when viewed in connection with all the other evidence in the case, as you think and believe it should receive. Has the plaintiff shown, by a preponderance of the evidence in this case, that the building in question and the personal property it contained, insured by the policy given in evidence in this case, were destroyed by lightning? If so, and you so believe and find from the evidence given on the trial, the plaintiff is entitled to recover. If, on the other hand, you believe and find from the evidence that the insured property was destroyed by a wind-storm, and that lightning was not an active agent in its destruction, then the plaintiff is not entitled to re-cover; for this policy of insurance contains no agreement to pay for property destroyed by wind or a wind-storm.

"Evidence has been given on the trial tending to show that electricity is the primary cause of tornadoes. [If you should find from the evidence given on the trial that this tornado was itself caused by electricity, but you should at the same time believe and find from the evidence that the property of John Spensley, insured by the policy in evi-dence, was destroyed by the wind or whirlwind of this tornado thus caused, and not by lightning in its plain, ordi-nary, and popular sense, the plaintiff would not be entitled to recover.] The reason of this is that the law looks to the proximate cause of the injury, and not to the remote cause, and by proximate cause is meant that which immediately preceded and caused the destruction of the property, and not to the remote cause or the predisposing cause. Or, in other language, 'it were infinite for the law to consider the

cause of causes and their impulsions, one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree.' But if you find from the evidence in this case that accompanying this tornado or tornado cloud were large quantities of lightning, and that the property insured was in any way or by any means destroyed by such lightning, then, for a loss and destruction thus caused, the plaintiff would be entitled to recover, and to recover for all damages thus sustained, not exceeding the sum of $1,000, with interest at seven per cent. from the 12th day of September, A. D. 1878."

Those parts of the foregoing charge which are enclosed in brackets thus [], were excepted to by the plaintiff. The court also gave to the jury several instructions at the request of the respective parties, which need not be repeated. The jury returned a special verdict to the effect that the property was not destroyed or damaged by lightning, as understood in its plain, ordinary, and popular sense; that it was not destroyed or damaged by lightning nor fire; and also found generally for the defendant. To review the judgment entered on such verdict the plaintiff sued out a writ of error.

For the plaintiff in error there was a brief by *Lanyon & Spensley*, attorneys, and *P. A. Orton*, of counsel, and oral argument by *Mr. Spensley*.

For the defendant in error there were briefs by *Moses M. Strong*, attorney, and *J. W. Lusk*, of counsel, and oral argument by *Mr. Strong*.

CASSODAY, J. The defendant's motion to remit the record and order the trial judge to incorporate the evidence taken into the bill of exceptions is denied, with $10 costs. As the only errors complained of are found in the charge to the jury, the trial judge very properly declined to incumber the record by making such evidence a part of it. It is difficult to see how the defendant could have been benefited by

including it, for unless error appears of record the presumptions are always in favor of the judgment. It is quite common to remit the record to enable the trial judge to correct some mistake or inadvertence; but where it is sought to coerce such judge, he should at least have a hearing as upon *mandamus*. The view we have taken of the case, however, renders it unnecessary to consider that question.

The nature of the case was so fully stated, and the substance of the evidence so fully given, in the report of the case on the former appeal (54 Wis. 433), that no repetition is here deemed necessary. A large portion of the charge upon the last trial is given in the above statement, and hence we shall confine this opinion to the consideration of such portions of the charge as have been criticised by counsel.

It is urged that the trial court gave undue prominence to the expert witnesses and their testimony in the case. It should be remembered, however, that the fact sought to be proved — the presence or absence of lightning as an agency in the destruction of the property — was incapable of direct, positive testimony, but dependent wholly upon the circumstances attending the destruction and the opinions of experts. It seems to us that the charge, on the whole, fairly presented the nature, value, and weakness incident to expert testimony. Under the ruling of this court, the presence or absence of lightning, as an agency in the destruction of the property, was a question of fact for the jury, and hence all must abide their determination, unless material error has intervened. Viewing the charge as indicated, we shall confine what we say to that portion of it upon which counsel for the plaintiff seem to rely most confidently.

Exception is taken because the court charged the jury "that although the preponderance of the evidence *is not always* determined by the *number* of witnesses, still, in a case where a question is to be determined by the testimony of *men of great scientific attainments, other things being*

Spensley, Adm'x, etc. vs. The Lancashire Ins. Co.

*equal*, the greater number would carry greater weight; that is, the testimony of eight or nine such witnesses would be entitled to greater weight than that of two. . . . But in this case it is your province to give such weight to the testimony of the experts, when viewed in connection *with all the other evidence* in the case, as you think and believe it should receive." In support of this objection, counsel rely upon *Ely v. Tesch*, 17 Wis. 202; *Bierbach v. Goodyear Rubber Co.* 54 Wis. 208. In each of these cases it was held error to instruct the jury, in effect, that where all the witnesses were of equal credit, and those on one side in conflict on a particular question with those on the other, the side having the greater number of such witnesses had the greater weight of evidence upon such question. The vice of such error is stated by Mr. Justice Lyon in the last case cited: "It ignores every condition but that of credibility, whereas there are other conditions which should be considered in framing a rule on that subject." Several witnesses may be equally credible, and yet their opportunities for knowing, their capacity for comprehending, their attention to the facts at the time, and their ability to hold the same in the memory, and many other things, may enter into the weight to be given to their testimony. We do not think the instruction before us is open to that objection. The court was speaking about questions "to be determined by the testimony of men of great scientific attainments," and simply declared the truism that when such men testify on such questions, "*other things being equal*, the greater number would carry greater weight." By "other things being equal," we understand the court to mean *all* things being equal in respect to each of such witnesses so testifying. This not only included the credibility of the respective witnesses, but their opportunities, capacities, attention, memory, and every other fact and circumstance in any way going to make up the weight of their testimony. It may be difficult to see just

how all such things could be equal as to each of several witnesses; but what was said about giving the greater weight to the greater number is predicated wholly upon such equality in all things, and whether it did or did not exist, was, after all, left to the jury.

We find no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.